Rcv'd by: _____

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

USDC- GREENBELT
'24 DEC 6 PM 1:11

**ANDREA M. BLACK**

_____

_____

*(Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)*

**-against-**

**GOVERNMENT EMPLOYEES INSURANCE COMPANY**

_____

*(Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)*

**Complaint for Employment Discrimination**

Case No. *LKG* 24 CV 3531

*(to be filled in by the Clerk's Office)*

Jury Trial:   ☒ Yes   ☐ No
*(check one)*

I.      **The Parties to This Complaint**

A.      **The Plaintiff(s)**

Provide the information below for each plaintiff named in the complaint.  Attach additional pages if needed.

| | |
|---|---|
| Name | Andrea M. Black |
| Street Address | 18640 Pier Point Pl |
| City and County | Montgomery Village / Montgomery County |
| State and Zip Code | MD, 20886 |
| Telephone Number | (757) 893.0481 |
| E-mail Address | blackandreamarie@gmail.com |

B.      **The Defendant(s)**

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation.  For an individual defendant, include the person's job or title (if known).  Attach additional pages if needed.

Defendant No. 1

| | |
|---|---|
| Name | Government Employees Insurance Company |
| Job or Title (if known) | |
| Street Address | 5260 Western Ave |
| City and County | Chevy Chase / Montgomery County |
| State and Zip Code | MD, 20815 |
| Telephone Number | (757) 893.0481 |
| E-mail Address (if known) | blackandreamarie@gmail.com |

Defendant No. 2

| | |
|---|---|
| Name | _____ |
| Job or Title (if known) | _____ |
| Street Address | _____ |
| City and County | _____ |
| State and Zip Code | _____ |
| Telephone Number | _____ |
| E-mail Address (if known) | _____ |

Defendant No. 3

| | |
|---|---|
| Name | _____ |
| Job or Title (if known) | _____ |
| Street Address | _____ |
| City and County | _____ |
| State and Zip Code | _____ |
| Telephone Number | _____ |
| E-mail Address (if known) | _____ |

*(If there are more than three defendants, attach an additional page providing the same information for each additional defendant.)*

**C.    Place of Employment**

The address at which I sought employment or was employed by the defendant(s) is:

| | |
|---|---|
| Name | GEICO |
| Street Address | 5260 Western Ave |
| City and County | Chevy Chase / Montgomery County |
| State and Zip Code | MD, 20815 |
| Telephone Number | _____ |

3

## II.    Basis for Jurisdiction

This action is brought for discrimination in employment pursuant to *(check all that apply)*:

☒    Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (race, color, gender, religion, national origin).

*(Note:  In order to bring suit in federal district court under Title VII, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☐    Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 to 634.

*(Note:  In order to bring suit in federal district court under the Age Discrimination in Employment Act, you must first file a charge with the Equal Employment Opportunity Commission.)*

☐    Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 to 12117.

*(Note:  In order to bring suit in federal district court under the Americans with Disabilities Act, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☐    Other federal law *(specify the federal law)*:

_____

☒    Relevant state law *(specify, if known)*:

MARYLAND FAIR PRACTICES ACT

☐    Relevant city or county law *(specify, if known)*:

_____

## III.    Statement of Claim

Write a short and plain statement of the claim.  Do not make legal arguments.  State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought.  State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct.  If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph.  Attach additional pages if needed.

4

A.      The discriminatory conduct of which I complain in this action includes *(check all that apply)*:

        ☐      Failure to hire me.

        ☒      Termination of my employment.

        ☒      Failure to promote me.

        ☐      Failure to accommodate my disability.

        ☒      Unequal terms and conditions of my employment.

        ☒      Retaliation.

        ☐      Other acts *(specify)*: _____

*(Note:  Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court under the federal employment discrimination statutes.)*

B.      It is my best recollection that the alleged discriminatory acts occurred on date(s)

**February 2019 - March 2021**
_____

C.      I believe that defendant(s) *(check one)*:

        ☐      is/are still committing these acts against me.

        ☒      is/are not still committing these acts against me.

D.      Defendant(s) discriminated against me based on my *(check all that apply and explain)*:

        ☒      race  **African American**

        ☒      color  **Black**

        ☒      gender/sex  **Female**

        ☐      religion _____

        ☐      national origin _____

        ☐      age.  My year of birth is _____. *(Give your year of birth only if you are asserting a claim of age discrimination.)*

        ☐      disability or perceived disability *(specify disability)*

_____

E.    The facts of my case are as follows.  Attach additional pages if needed.

Please See Attached Pages:

- Complaint

- Copy of Charge filed with Montgomery County Office of Human Rights (MCOHR)

- Copy of Montgomery County Office of Human Rights Determination Letter

- Copy of EEOC Notice of Right to Sue

*(Note:  As additional support for the facts of your claim, you may attach to this complaint a copy of your charge filed with the Equal Employment Opportunity Commission, or the charge filed with the relevant state or city human rights division.)*

## IV.    Exhaustion of Federal Administrative Remedies

A.    It is my best recollection that I filed a charge with the Equal Employment Opportunity Commission or my Equal Employment Opportunity counselor regarding the defendant's alleged discriminatory conduct on *(date)*

February 25, 2021

B.    The Equal Employment Opportunity Commission *(check one)*:

☐    has not issued a Notice of Right to Sue letter.

☒    issued a Notice of Right to Sue letter, which I received on *(date)*
September 10, 2024                                                                        .

*(Note:  Attach a copy of the Notice of Right to Sue letter from the Equal Employment Opportunity Commission to this complaint.)*

C.    Only litigants alleging age discrimination must answer this question.

Since filing my charge of age discrimination with the Equal Employment Opportunity Commission regarding the defendant's alleged discriminatory conduct *(check one)*:

☐    60 days or more have elapsed.

☐    less than 60 days have elapsed.

V.    **Relief**

State briefly and precisely what damages or other relief the plaintiff asks the court to order.  Do not make legal arguments.  Include any basis for claiming that the wrongs alleged are continuing at the present time.  Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts.  Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

Back pay, including fringe benefits, front pay, injunctive relief, compensatory and punitive damges, in the amount of not less than $180,00 or an amount otherwise permitted by statute, and attorney's fees and costs of litigation, all in an amount to be proven at trial.

**VI.    Certification and Closing**

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

**A.    For Parties Without an Attorney**

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: DECEMBER 6th, 20 24.

Signature of Plaintiff        _Andrea M. Black Q. Black_

Printed Name of Plaintiff    Andrea Marie Black

*(If more than one plaintiff is named in the complaint, attach an additional certification and signature page for each additional plaintiff.)*

**B.    For Attorneys**

Date of signing: _____, 20___.

Signature of Attorney      _____

Printed Name of Attorney   _____

Bar Number               _____

Name of Law Firm          _____

Address                  _____

Telephone Number          _____

E-mail Address            _____

# IN THE UNITED STATES DISTRICT COURT
# FOR DISTRICT OF MARYLAND

ANDREA M. BLACK
Plaintiff,

v.

GOVERNMENT EMPLOYEES INSURANCE COMPANY,
Defendant

Case No.: _____

## COMPLAINT

COMES NOW, Ms. Black and brings this action and brings this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. (hereinafter, "Title VII"), the Civil Rights Act of 1866, 42 U.S.C. § 1981 (hereinafter "Section 1981"), the Maryland Fair Employment Practices Act (FEPA), Md. Code Ann., State Gov't § 20-601 et seq., and [are there others to incorporate?]. Plaintiff alleges that Defendant, Government Employees Insurance Company subjected Plaintiff to discrimination based on [their] race, color, sex and retaliation after she participated in protected activities, and respectfully shows the Court as follows:

### JURISDICTION AND VENUE

1.

This Court has original jurisdiction over the subject matter of this civil action pursuant to 28 U.S.C. §§ 1331 & 1367 and the enforcement provisions of Title VII of the Civil Rights Act of 1964 and the Maryland Fair Employment Practices Act.

2.

Venue is proper in this judicial district because the events underlying this action, occurred in Montgomery County, Maryland, which is located in this judicial district, pursuant to 28 U.S.C. §§ 1331 and 42 U.S.C. § 2000e-5(f)(3).

### PARTIES

3.

Plaintiff, Andrea Black (hereinafter, "Plaintiff" or "Ms. Black"), is a citizen of the United States of America and a resident of the State of Maryland. At all times relevant to this suit, Ms. Black was employed by Government Employees Insurance Company. Ms. Black was a covered, non-exempt employee under all laws referenced herein.

4.

Defendant, Government Employees Insurance Company, (hereinafter, "Defendant," or "GEICO") is a foreign insurance company, incorporated under the laws of the State of Maryland and authorized to conduct business in the State of Maryland. GEICO's principal office is located at 5260 Western Ave, Chevy Chase, MD 20815, and Defendant may be served with process through its Registered Agent: Corporation Service Company, located at 251 Little Falls Drive, Wilmington, DE 19808.

5.

Defendant is a major national insurance carrier and is one of the largest automobile insurance companies in the country. Defendant is engaged in interstate commerce, has an annual revenue in excess of $500,000.00, and has employed far in excess of 501 employees working for at least 20 calendar weeks in 2019 and in prior calendar years. As a result, Defendant is a covered employer within the meaning of the Title VII of the Civil Rights Act and the Civil Rights Act of 1866, 42 U.S.C. § 1981 (hereinafter "Section 1981"),  the Maryland Fair Employment Practices Act (FEPA), Md. Code Ann., State Gov't § 20-601 et seq.

## STATEMENT OF FACTS

6.

Plaintiff hereby pleads and incorporates by reference all of the allegations contained in Paragraphs 1 through 5, as if the same and fully set forth herein.

7.

Ms. Black is a Black Female.

8.

Ms. Black first began her employment with the GEICO on February 9, 2015.

9.

Ms. Black was initially assigned to a Management Development role in 2015 at the GEICO's Virginia Beach location.

10.

Ms. Black then accepted a promotion to Supervisor and a transfer to GEICO's Indiana office in 2016. While there Ms. Black earned a promotion for a higher grade and salary.

11.

Ms. Black earned another promotion and was transferred to GEICO's headquarters in the Maryland office in 2018 when she accepted a Scrum Master position.

12.

Ms. Black earned a lateral promotion to join the newly created (GEICO Management Academy (hereinafter "GMA"). The GMA department was responsible for talent development and succession planning in the organization.

13.

For the last two years of her employment, Ms. Black served as a Talent Development Lead in the (GMA), internal job title officially was Rotational Exempt IV. Towards the end of her tenure while working for GEICO, Ms. Black was the only Black Female in a Rotational Exempt IV role in the department.

14.

As a Talent Development Lead, Ms. Black's main responsibilities were to create curriculum development courses and related materials for staff training and development for Management members at the GEICO Headquarters.

Importantly, Ms. Black was in a role that was listed as rotational. Defendant's Handbook regarding its policy on Job Rotations:

> "Associate Job Rotation – A job rotation is a temporary assignment generally not to exceed 24 months.
> Salary Adjustments/Bonus Considerations – Associates will be paid according to the grade of the temporary job at the temporary location."

Ms. Black worked at the GEICO's Headquarters in Maryland.

15.

Ms. Black performed her assigned duties in an above satisfactory manner at all times. She was most often rated at a 4.0 or above on a 5.0 scale for each consecutive year of employment with GEICO. The only year they were rated a 3.9, was in 2019 while Ms. Black was working in GMA.

16.

September 20, 2019, GEICO posts announcement for role within GMA department. Job code is listed as 67ROTX with a 12-24 months commitment. Manager of role listed as Brette Cox [Caucasian Male].

17.

On January 7, 2019, Ms. Black started their new role as Talent Development Lead within a newly formed department, (GMA) reporting to Allen Trawick.

18.

Ms. Black was the only Black Female on her initial team reporting to Allen Trawick. The other two colleagues in the same reporting structure were Alex Etuk, Caucasian Female and Amanda Mapp, Hispanic Female.

19.

On January 29, 2019, Ms. Black conducted an in-person meeting with Allen Trawick and voiced some concerns with the leadership behaviors she had observed and encountered when working with Allen Trawick almost immediately after her start date. Specifically, she had expressed discomfort around Allen Trawick lack of professionalism and ethical conduct in their work behavior and how it was detrimentally impacting Ms. Black and the overall team's productivity and work flow. Allen Trawick replied with, "I didn't expect you to read me to filth." The environment then immediately began to borderline and eventually produce an adverse work culture.

20.

Immediately after the January 29, 2019 meeting with Allen Trawick, Ms. Black experienced a rapid decline in work responsibilities and isolation from Allen Trawick and fellow team members. Allen Trawick began providing little or no feedback regarding Ms. Black's projects. This was the catalyst to a broader pattern of discriminatory conduct that created comparative treatment regarding Ms. Black.

21.

Ms. Black made repeated attempts to be treated fairly regarding workload and treatment. Ms. Black met with Allen Trawick on February 27, 2019 to gather feedback and next steps on a project Ms. Black was assigned to (Pitch Day). Allen Trawick acknowledged he received Ms. Black's prior submissions, but had not reviewed them. Allen Trawick then went on to say that he created his own pieces for the project assigned to Ms. Black and did not use her work at all. The behavior and adverse actions demonstrated by Allen Trawick specifically was used to undermine Ms. Black ability to perform her job duties and begin taking a psychological toll on her.

22.

Allen Trawick consistently provided feedback and opportunities to his other direct employees, but withheld the same from Ms. Black. As a result of lack of clear guidance or feedback, she struggled to meet expectations to improve or be rated fairly within the Department.

23.

Ms. Black began to endure more adverse actions that worsened quickly over time. On March 5, 2019, a scheduled team meeting was to take place with Allen Trawick, Ms. Black, and the other two coworkers to discuss project status and deliverables. Instead, the meeting was cancelled and then a separate meeting was had without Ms. Black, leaving her with less knowledge and timely information regarding all projects. Including projects that were directly tied to Ms. Black. Exclusion from discussions, meetings, and project updates caused the Ms. Black to feel marginalized, undervalued and alienated.

24.

Allen Trawick's comparative treatment towards Ms. Black lead to her gaining less recognition on achievements affecting promotability. In comparison, fellow team members received the support they needed to in order to advance. They were also rated above Plaintiff in performance metrics at all times Ms. Black reported to Allen Trawick.

25.

Ms. Black overheard a conversation with Allen Trawick and coworker Alex Etuk, Caucasian Female. In this conversation, Ms. Black has learned a project both Ms. Black and Mrs. Etuk] had been mutually assigned to, her coworker Mrs. Etuk would only be handled her going forward. Mr. Trawick never responded to any of Ms. Black's email correspondences regarding the project. In addition, never formally shared Ms. Black had been taken off of the project, and that it was reassigned only to her Caucasian Female counterpart.

26.

Ms. Black continued reporting to Mr. Trawick and faced a sharp elevation into a hostile work environment. Ms. Black started experiencing extreme anxiety, depression, severe fatigue, and issues focusing. She was actively being excluded from critical project discussions while her other colleagues were actively supported and engaged.

27.

On March 7, 2019, Ms. Black went on a protected leave of absence under Family and Medical Leave Act (FMLA) of 1993, to remove herself from the hostile work environment that she was experiencing from Allen Trawick and other two coworkers at direction of Mr. Trawick.

28.

On March 14, 2019, Ms. Black filed an ethics line complaint via GEICOs online portal: Ethics Point. Ms. Black named Allen Trawick in the complaint citing retaliatory behavior experienced by Mr., Trawick and her other two team members, Alex Etuk [Caucasian Female] and Amanda Mapp [Hispanic Female], continuous exclusion from key meetings, the lack of communication from Mr. Trawick, the shift in projects and removal of projects, and other key experiences.

29.

March 27, 2019, Ms. Black returns to work from protected leave under Family and Medical Leave Act (FMLA) of 1993. Ms. Black's reporting relationship did not change. Ms. Black was still the only Black Female on Mr. Trawick working with two coworkers, Alex Etuk [Caucasian Female] and Amanda Mapp [Hispanic Female]. GEICO was still investigating Ethics line complaint submitted by Ms. Black.

30.

April 2, 2019 Ms. Black logs a record into the Ethics line complaint inquiring about an update on the GEICO's ongoing investigation into Allen Trawick previously filed. Ms. Black shared the following in the record for that day:

"4/20/2019 9:26 AM posted by Reporter:

Greetings,

I wanted to follow up on the status of my complaint. I returned to work 3/27/19 and I still feel extremely uncomfortable if not more with the work environment that I am in. The same retaliation techniques and behaviors are being exuded by the same (if not more members). I am aware the ethics complaints are confidential but I am sure my complaint has been shared with other members of staff. I have reached out to my manager but he has ceased all email communication since 3/7 (so I am not aware of what he has prioritized for me to work on, nor has he responded to my prior emails). His only contact were vm that he left when I initially left, but once my complaint was filed absolutely no contact has happened. He has sent two emails today but not related to any of my follow up items. I am not sure if I can stay under the same work conditions and want to know what the next steps/my best options are at this point?"

31.

April 2, 2019, Ms. Black receives a response from the GEICO's Ethics line complaint portal (EthicsPoint), as follows:

"4/2/2019 10:03 AM posted by Organization:

Thank you for taking the time to share this concern. At this time, the matter is still being investigated and a response will be provided once the investigation is completed. Should

you have any additional information that may assist in the investigation, we ask you to
add it to this report."

32.

On April 9, 2019, Allen Trawick and Ms. Black engage in a work-related strenuous call
regarding Ms. Black's current tasks that rose to the level of harassment and continuously
engineered a hostile work environment.

33.

On April 10, 2019, Ms. Black logged another record for their ethics line complaint via GEICOs
online portal: EthicsPoint. Plaintiff described very specific details, timeline of specific
discriminatory and retaliatory acts that included through present day (including details of April 9,
2019 call between Ms. Black and Allen Trawick), of the extremely difficult work environment
she was subjected to day after day.

34.

On May 20, 2019, after 63 days the Defendant closes the Ethics complaint Ms. Black submitted
against Allen Trawick. GEICO's response was as follows:

"10:42 AM posted by Organization:

We would like to thank you for coming forward with your concerns. The matter was
investigated and the findings were reported for appropriate handling. At this time, the
matter is closed and any action(s) found to have violated Company policy have been
addressed in accordance with the Company's corrective action policy. Should you have
additional concerns, we encourage you to utilize GEICO's Open Door Policy, which is
designed to provide a channel of communication to assist associates in resolving
concerns. As part of the Open Door Policy, an associate may speak to his/her manager or
supervisor, the Human Resources Manager in the business location, a member of the
Corporate Human Relations Staff located at GEICO Plaza, the Human Relations Director,
the Assistant Vice President of Human Resources, or the Vice President of Human
Resources. The Company in all circumstances prohibits retaliation of any kind against
those who report ethical violations in good faith. In addition, you may open a new case in
the NAVEX Global System."

35.

During the time Ms. Black filed complaint, Plaintiff met with numerous HR Staff members to
have documented conversations of the ongoing comparative treatment against Ms. Black. It came
to a point where Ms. Black met with HR members, Tracee White and an additional HR
representative communicating that there was no change in work productivity, feedback,
prioritization of tasks, or any change in behavior from Allen Trawick. They assured Ms. Black

that the behavior demonstrated from Mr. Trawick and her other team members would change and HR would have a follow up conversation with Mr. Trawick.

36.

After the conclusion of the Ethics complaint, no change in hierarchy or team was had, Ms. Black still reported directly under Allen Trawick and with the same two team members, Alex Etuk [Caucasian Female] and Amanda Mapp [Hispanic Female].

37.

Ms. Black learns that HR had previously looked into several allegations regarding discrimination, hostile work environment, age discrimination, and lack of professionalism before all with Allen Trawick name as the main offender.

38.

Ms. Black learns another department member, Amber Ryan, who was a part of the GMA department prior to Ms. Black's arrival had also gone to Department Leadership and HR regarding Allen Trawick's treatment towards her when she reported to him. She was a Caucasian Female. After Mrs. Ryan escalated her concerns, the Department changed her direct manager to another internal manager to remove her from the situation under Mr. Trawick.

39.

From January 2019 – October 2019, Plaintiff continued to endure a hostile work environment and retaliatory behaviors under her direct manager Allen Trawick and from her two coworkers in a complicit effort. Many, if not all, members of the GMA were aware of the circumstances but no changes occurred. Even though Ms. Black alerted GMA leadership of what she was experiencing, no significant changes came into effect.

40.

On or around June 2019, James Mount [Caucasian Male] who was a part of the HR department began to work alongside Allen Trawick team with Ms. Black. James Mount was witness to several incidences and interactions between Allen Trawick and Ms. Black. He witnessed the retaliatory actions, Allen Trawick and other members of department engaged in harassing or excluding Ms. Black from important work-related initiatives affecting her role. During the course of James Mount's entire interaction with Ms. Black, he never once submitted an Ethics line complaint or initiated an investigation into Allen Trawick.

41.

October 4, 2019, Allen Trawick further engages in adverse treatment of Ms. Black. Ms. Black was actively searching for new roles outside of Allen Trawick's team and/or department for her mental and physical well-being. Ms. Black had submitted a job application via GEICO's internal job portal, Career Connect, for a GFR Training Manager. Allen Trawick emailed Ms. Black regarding job application.

42.

Regarding October 4, 2019 email, originally Allen Trawick denied Ms. Black from proceeding with her application citing Ms. Black did not have required Sales Training experience.

43.

Ms. Black responded back to Allen Trawick email sharing experience within sales while working for GEICO. Ms. Black's email prompted Allen Trawick to rescind rejection of application. Only after highlighting this was Ms. Black allowed to move forward with her application process.

44.

Ms. Black later learns that her fellow co-worker who reported to Allen on the same team, Amanda Map [Hispanic Female], was allowed to post for same role without rejection of application or issue. Ms. Black had an extremely similar background (in terms of experience) with their counterpart, gaining Sales experience from a Sales rotation under the GEICO's Management Development Program when Ms. Black was in this role from 2015-2016.

45.

During this time, Ms. Black learns from HR that Allen Trawick was not following job posting requirements according the GEICO's employee handbook. While Mr. Trawick was writing and providing positive recommendations and support for her other team members, the same treatment was not extended to Ms. Black. Aside from one job post, Mr. Trawick failed to provide any additional information regarding Ms. Black's capabilities and performance.

46.

On October 16, 2019 a severe incident happened which prompted another member within GEICO's workforce to file another Ethics claim against Allen Trawick, highlighting the actions of Allen Trawick's treatment towards Ms. Black that day. The ethics line complaint alerted HR and Department leadership that Allen Trawick attempted to intimidate Ms. Black and undervalue what she was saying while facilitating a large class of approximately 30 people. During Ms. Black's facilitation, Allen Trawick walked to the front of the class and began asking the class questions to bring contradiction to what Ms. Black was teaching.

47.

Regarding same incident, Ms. Black learned from the coworker who submitted the complaint that they held a personal conversation with Allen Trawick after he purposely cut off Ms. Black and began to try and facilitate the class instead. They advised Allen Trawick, "It looks like you were trying to make her look bad." To which Allen Trawick replied, "It's because she doesn't know what she's talking about."

48.

During same event, Allen Trawick attempted to remove Ms. Black from presenting during a class she was facilitating that day. During this time, Allen Trawick proceeded to walk up where the Ms. Black was standing during a scheduled break. Allen Trawick became confrontational and tried to intimidate Ms. Black by coming within extremely close proximity (within inches of her face) and asking her to "step away from the podium." Ms. Black voiced their concerns with proximity and their comparative treatment during class and asked Allen Trawick to remove themselves from class due to the threatening manner. Allen Trawick left Ms. Black's face, but returned to back of class to monitor with other coworkers.

49.

HR representative, James Mount, was present during this October 16, 2019, along with Ms. Black's two team members. None of the parties who witnessed the interaction filed an Ethics line complaint or alerted management.

50.

Regarding October 16, 2019 incident, a meeting was held post-event with Marouf Ahmed & Allen Trawick. Ms. Black shared survey/document at this time from coworker who spoke with Allen Trawick in paragraph 47. Document included a request for the Department Head to reach out the individual regarding the extremely alarming interaction that occurred during Ms. Black's class facilitation. The document outlined coworkers concerns with Allen Trawick's behaviors and interaction with Ms. Black during class and what he witnessed.

51.

October 16, 2019, Ms. Black provides a written statement to GEICO HR department sent via email. In this statement, Ms. Black advised how Allen Trawick came to her during a break and was in immediate proximity of her area that she felt threatened and taken aback by his actions. After this discussion, Allen Trawick went as far as interrupting Ms. Black during her facilitation of a live class.

52.

Ms. Black also provides written statement via email to Marouf Ahmed (Department Head) per his directive in relation to the incident on October 16, 2019.

53.

On October 31, 2019, Ms. Black contacted HR representative, Traece White, who served as one of the key liaisons for Ms. Black's ethics line complaint against Allen Trawick from earlier in the year. Ms. Black outlined a lengthy history of the treatment she experienced under Mr. Trawick and presented accompanying documentation.

54.

It's important to note, all members of Allen Trawick's team, including Mr. Trawick himself had been facilitating classes for management team since mid-2019. Each member had observed other member's during facilitation to determine if any changes needed to be made to the course content or facilitation techniques. This was Allen Trawick first time observing Ms. Black, and during the entire time Ms. Black reported to Allen Trawick, he never went to observe other two coworkers. It was part of the hostile work environment and intimidating behavior Mr. Trawick repeatedly made towards Ms. Black.

55.

November 1, 2019, Allen Trawick reaches out to Ms. Black via email regarding a work absence from the day prior. Based on the nature of the conversation, Ms. Black requested all emails going forward have Marouf Ahmed cc'd on them for visibility and safety. It was another one of Mr. Trawick's attempts trying to intimidate Ms. Black and embarrass her.

56.

In same email thread from November 1, 2019, Ms. Black cites GEICO employee handbook workplace/leave policy in response to Allen Trawick. Ms. Black showed there was an established behavior regarding leave. Ms. Black pointed out Mr. Trawick is violating handbook policy. Allen Trawick communicated regardless he would be denying her leave. Ms. Black, inquired for "business reason," Mr. Trawick was citing to deny her leave based on GEICO employee handbook policy. During this exchange, Marouf Ahmed did not respond back to any email, conduct an internal investigation, or acknowledge Ms. Black's concerns.

57.

On November 1, 2019, Plaintiff requests meeting with Marouf Ahmed and Allen Trawick to discuss the following:

- Go over YTD rating
- Current and previous job post comments and ratings
- Review of my desk file

The meeting was scheduled for November 18, 2019 as that was the soonest availability for all three parties.

58.

On November 18, 2019 a meeting is held with Ms. Black, Allen Trawick, and Marouf Ahmed. During this time no issues are raised regarding Ms. Black. While Ms. Black's performance was discussed, Ms. Black was not granted access to desk file, was not given her YTD rating, and was

not able to view any of the job post comments or ratings for roles she had previously applied for while reporting to Mr. Trawick.

59.

During this meeting, Ms. Black highlighted concerns on Allen Trawick still excluding Ms. Black from meetings, and only meeting with other two coworkers regarding team projects and personal projects. Ms. Black advised more meetings were held without her, to which Mr. Trawick confirmed. Marouf Ahmed did not address concern and instead ended the meeting.

60.

Between November 2019 – February 2020, Ms. Black reached back out to HR asking about an update in the ethics line investigation that was submitted October 2019.

61.

Due to the ongoing comparative and disparate treatment, Ms. Black began suffering severe ocular migraines that was leading to repeated loss of vision during commute back home. It also led to Ms. Black engaging in frequent therapy. In addition, Ms. Black also ended up needing an accommodation under the Americans with Disabilities Act (ADA) due to the stress regarding work, providing her intermittent leave.

62.

Ms. Black was also attending several doctor visits to seek treatment for stress and actions from work. Ms. Black repeatedly went to attending Physician's with concerns for her extreme fatigue, anxiety, depression, weight gain and loss, trouble concentrating, and other ailments.

63.

In March 2020, Ms. Black learns from Allen Trawick that he is being removed from the GMA Department, demoted to a Grade 64, but was able to retain his current salary. Mr. Trawick was provided this information by HR Executive Leadership – Jan Stewart.

64.

March 11, 2020, Allen Trawick removal from GMA was announced via email by Marouf Ahmed. Mr. Trawick joined the GEICO's Corporate HR Training team as an Instructional Designer.

65.

Ms. Black reports to GMA Department Head, Marouf Ahmed (Eastern/Asian Male) for a brief period after Allen Trawick's demotion and removal from role. In this time, Mr. Ahmed never raises concerns over Ms. Black's performance.

66.

On March 26, 2020, a virtual meeting is held between Ms. Black, Marouf Ahmed, and another Manager Tom Willet [Caucasian Male]. In this meeting, Ms. Black was told by Mr. Ahmed that they believed working under/with Tom Willet would be a positive transition for Ms. Black.

67.

Ms. Black and Tom Willet had limited interactions with each other as they were on separate teams. These teams handled separate audiences within the GEICO's workforce. During Tom Willet's tenure with GMA, numerous complaints were made orally and in writing to Marouf Ahmed. Feedback was also documented on Tom Willet's 360 feedback rating and performance. Employees in the Department cited numerous managerial deficiencies within Tom Willet's work ethic and concerns as a member of management.

68.

During March 26, 2020 meeting, Ms. Black shared that she and Tom Willet had same access to materials, but target audience was starkly different. After the final decision was made that Ms. Black would not be joining Tom Willet's team, Ms. Black's work was then appropriated by Mr. Willet and used to his target audience. Despite this, Tom Willet is only demoted after Ms. Black leaves the department.

69.

Around April 2020, Ms. Black begins reporting to Brette Cox [Caucasian Male].

70.

While Ms. Black reported to Brette Cox, they met regularly in the form of virtual one-on-one's that were held on a regular cadence. Brette Cox often praised Ms. Black for her workmanship, taking on a coaching role for new department employees, and leading department-wide initiatives that drove engagement and productivity in the GMA department.

71.

April 22, 2020, GEICO GMA department posted the Supervisor – Leadership Training Development role. Hiring Manager is listed as Ms. Black's current manager, Brette Cox. The job duties and responsibilities align directly with Ms. Black's current line of work, knowledge, skills with certain systems, and responsibilities.

72.

During April 2020, Brette Cox encourages Ms. Black to apply for the recently posted GMA Supervisor role. Ms. Black shares apprehensions on posting for the job given her history within the GMA Department. Ms. Black also shares she does not believe she would be selected for the role due to this same history.

73.

On May 13, 2020, Brette Cox emails candidate pool regarding Supervision Role. Ms. Black is in receipt of email (bcc'd). Email contains pre-work requirements for role.

74.

The GEICO GMA department Supervisor – Leadership Training Development job post was to be taken down on May 19, 2020. It was not until Ms. Black submitted her pre-work was the job posting taken down.

75.

May 26, 2020, Ms. Black submits application and correlating pre-work requirements via job portal, Career Connect, for GMA Supervisor – Leadership Training Development position.

76.

In June 2020, Ms. Black interviews for Supervisor – Leadership Training Development role. Also interviewed for the position were Alex Gillespie [Caucasian Female] (internal to department), Benjamin Pacha [Caucasian Male] (internal to department), and candidates external to the department.

77.

July 15, 2020, Ms. Black meets virtually with Brette Cox and another manager within the department, Jared Hair. She learns she is not selected for position. After this, Ms. Black and fellow team member  Benjamin Pacha[Caucasian Male] are the only two employees left in a rotational/non-exempt status within the GMA Department.

78.

July 2020, a department email is shared announcing Alex Gillespie [Caucasian Female] is selected for Supervisor – Leadership Training Development position.

79.

Alex Gillespie [Caucasian Female] had less tenure in department compared to Ms. Black. Ms. Gillespie was also not exposed to same audiences as Ms. Black. Ms. Gillespie worked only with

teams related to GEICO's Claim branch. Ms. Black had more experience as she worked with numerous teams in GEICO;s home office location. Defendant then went on to use Ms. Black's prework to and provide it to Ms. Gillespie to aid her in her new duties and responsibilities as Leadership Training Development Supervisor.

80.

Ms. Black believes she was prompted to apply for the role only to obtain her knowledge in the pre-work submitted. This was so that it would be provided to Alex Gillespie [Caucasian] [Female] to aid her in the Supervisor – Leadership Training Development role.

81.

Marouf Ahmed is promoted to AVP of GMA. With this, a new Lori Rickert-Hewing's joins the GMA department Lori Rickert-Hewings [Caucasian Female]. Early into Mrs. Rickert-Hewings's onboarding with the team, Ms. Black meets with her and discusses Ms. Black's career path and rotation. Ms. Black shares that she had experienced a lot of difficulties in the past with the department.

82.

July 21, 2020, Ms. Black emails HR Manager, Jyoti Cox, at the direction of Marouf Ahmed regarding her concern with the Supervisor selection. Also carbon copied on the email are Tracee White, James Mount,  and Marouf Ahmed. Mr. Ahmed emails Ms. Black, "you do not want a perception as someone who is difficult to work with." Mr. Ahmed encouraged Ms. Black, to reach out to HR department to get the notes/feedback regarding her July interview for the Supervisor – Leadership Training Development role.

83.

July 21, 2020, HR Manager, Jyoti Cox, responds back to Ms. Black's email:

> "Hi Andrea! I am not sure what you are looking for, but I can't share any of the paperwork that was given to me to approve since it has information about other candidates."

84.

August 3, 2020, Ms. Black reaches out via email to Brette Cox to inquire about securing a new role. Ms. Black shows willingness and eagerness to secure permanent role.

85.

In July – August 2020, during Ms. Black's and Brette Cox ongoing one-on-one's, Brette Cox advises GEICO would move her into lateral permanent position. Based on this offer, Ms. Black ceased her internal job search.

86.

August 12, 2020 a virtual GMA department-wide meeting was held by Marouf Ahmed. During this time, Mr. Ahmed shared with the entire department that the Defendant was undergoing company-wide calibrations, meaning all performance ratings will be adjusted.

87.

Under Defendant's company-wide performance calibrations, Marouf Ahmed worked with direct managers (including Ms. Black's), and the GMA department awarded a higher performance rating to Alex Gillespie [Caucasian Female]. This disproportionately impacted Ms. Black compared to her similarly situated colleagues; making the Ms. Black's performance appear less satisfactory as part of a purported company-wide review. This recalibration was applied unevenly, leading to discriminatory treatment against the Ms. Black.

88.

It is important to recognize that the Supervisor – Leadership Training Development role that Ms. Black was ultimately denied and given to her White counterpart, Alex Gillespie, was a Grade 68. Ms. Black was a Grade 67. Ms. Black would have earned a promotion, while this was a lateral move for Alex Gillespie. Though lateral moves do not come with a pay increase, Alex Gillespie's salary was increased.

89.

Further compounding this disparate treatment, the Defendant violated company policy by granting pay increases to Alex Gillespie, based off the higher rating given to Alex Gillespie compared to Ms. Black.

Alex Gillespie role as the Supervisor – Leadership Training Development was a lateral transition for her. She typically would not have received an increase in pay. Instead, she was compensated under the actions of Marouf Ahmed in the form of merit raises. These artificially boosted ratings were unjustly elevated above Ms. Black and were used to rationalize the raises. Ms. Gillespie had only been in the role for a limited amount of time. This is despite their recent promotions, reflecting a discriminatory application of company policy.

90.

Beginning November or December 2020, Lori Rickert-Hewings begins attending the virtual one-on-one meetings with Ms. Black and Brette Cox.

91.

December 17, 2020, Lori Rickert-Hewings, Ms. Black and Brette Cox meet in a virtual setting. It is here Ms. Black learns that the permanent position offered to her previously by Mr. Cox was rescinded, contradicting the previous assurance from Mr. Cox. Mrs. Rickert-Hewings advises Ms. Black that her rotation may end early (December 2020), with the risk of demotion or termination. When asked by Ms. Black what happened to the permanent position she was promised, Lori Rickert-Hewings asked Ms. Black who provided her with this information. Ms. Black shared it was given by her direct manager at the time, Brette Cox. Mrs. Rickert-Hewings' response to this was, "It doesn't matter." Ms. Black asked to verify when she was hired for the role, citing she was hired in January 2019. Mrs. Rickert-Hewings and Mr. Cox advised Ms. Black they would research into her hire date and other options within the GMA department. Ms. Black also requested that the same offer initially be offered by Mr. Cox be considered for Ms. Black, to be moved into a permanent position at a Grade 67, without a decrease in pay.

92.

This abrupt withdrawal of the job offer, coupled with the failure to provide a suitable alternative, highlights discriminatory behavior, as similarly situated colleagues were not subjected to such treatment. The actions of the Defendant created unnecessary barriers to Ms. Black's career advancement, underscoring a pattern of discriminatory intent.

93.

GMA Department posts another internal role that is a permanent position. It's for a Talent Development Coach role at a Grade 67. The position was put on hold and no one was hired until after Ms. Black was no longer with the company.

94.

Ms. Black was retaliated against because of the actions within the GMA department and aforementioned formal and informal grievances of Ms. Black and others had made on Ms. Black's behalf.

95.

December 2020, GMA Department email is sent out announcing upcoming year goals, changes, and reflection on the current year. Included in this email is an org chart of all department leadership and their direct reports. Ms. Black and Benjamin Pacha [Caucasian Male] in same status. They are both still reflected as rotational employees (Rotational Exempt IV).

96.

December 22, 2020. Brette Cox shares 3Q2020 and 4Q2020 performance rating with Ms. Black.

97.

On January 6, 2021, Brette Cox had a team huddle and announced that the two new supervisors, including Alex Gillespie, would be reporting to Tom Willet's team going forward. Ms. Black ascertains the entire reason she was denied the job was because she expressed trepidations about working with Tom Willet.

98.

January 6, 2021: Ms. has another virtual follow up meeting her manager Brette Cox and GMA Director, Lori Rickert Hewings', and is informed that her rotation will end in February 2021. If she does not secure a permanent role, she will face a demotion to Grade 64 or termination.

99.

January 6, 2021, a follow up email is sent to Lori Rickert-Hewings and Brette Cox from Ms. Black. Ms. Black captured what was discussed during the call and again confirms she was offered a permanent position by Brette Cox. Email excerpt below:

> "I also wanted to be clear and express, Lori Rickert-Hewings you did not offer me a lateral non-rotational job code. I know that was a point earlier it was provided by Brette Cox previously to our meeting." Lori Rickert-Hewings also shared "there [was] not a need in GMA for a position at the same grade level."

100.

Brette Cox meets with Ms. Black virtually. Mr. Cox confirms demotion with HR department. Ms. would be demoted to a Grade 64 with a salary decrease of $19,536.54 to a new annual salary of $64,0463.46 after six years of continued service.

101.

Ms. Black learns through conversation and the change in Workday (GEICO HR Management System) her fellow coworker, Benjamin Pacha [Caucasian Male] was moved into a permanent position within GMA. New title reflected to be GMA Corporate Program Coordinator, reporting to Jared Hair [Caucasian Male]. This position was never posted and a similar or same position was never offered to the Ms. Black.

102.

Benjamin Pacha started prior to Ms. Black coming to department. He was also Rotational Exempt IV with the same set time frame of 12-24 months. Mr. Pacha was not only allowed to stay in a non-exempt status longer than Ms. Black, but was also given a job that was never available to Ms. Black or posted on GEICO's job posting site. Benjamin Pacha was able to also keep their same pay.

103.

When Ms. Black asked Mr. Pacha how he was moved into a different role and if he ever had a discussion about being demoted, he advised he was told they were being moved into the position without any additional information. He were never threatened with termination or demotion.

104.

On February 25, 2021, Ms. Black was constructively discharged from GEICO and emailed Brette Cox resignation due to imminent financial harm and not being provided the same treatment to be moved into a lateral permanent position.

105.

On February 26, 2021, Brette Cox responds to Ms. Black's email and advises GEICO process for employee separation from company was initiated that day. Advised HR department would reach out regarding belongings and that last day effective March 12, 2021.

106.

Ms. Black worked within GMA for approximately a total of 796 days. In that time she reported to Allen Trawick for approximately 439 days. The ethics line complaint was open for a total number of 243 days combined between the first Ethics line complaint filed in March 2019 and October 2019. Ms. Black faced discriminatory behavior, adverse actions, a hostile work environment, comparative and disparate treatment from several Leadership members, and ultimately constructively discharged from her position.

107.

GEICO failed to take action against those who inflicted adverse actions on Ms. Black and otherwise failed to address Ms. Black's complaints of discrimination based on race, color, sex, or retaliation. In fact, many of the same members who provided differential treatment to Ms. Black were either promoted or rewarded.

Procedural/Administrative Background

108.

On February 25, 2021, Ms. Black dual-filed Charge of Discrimination with the
Montgomery County Office of Human Rights (hereinafter MCOHR) and Equal Employment
Opportunity Commission (hereinafter, "EEOC") under the Work-Sharing Agreement, alleging
that she had been subjected to continuing discrimination based on race, color, sex, as well as
retaliation. The EEOC assigned Ms. Black Charge Number #531-2020-01971C and OHR Case
No. E-06963

109.

GEICO had actual notice of the EEOC Charge, participated in the administrative proceedings,
and was represented by counsel at the time.

110.

On or about August 7, 2024, the MCOHR issued a Determination and Notice, which Ms. Black
received, through counsel, at some point thereafter. On or about September 5, 2024 the MCOHR
issued a Notice of Right to Sue, which Ms. Black received at some point thereafter.

111.

Ms. Black has exhausted her administrative remedies as to the claims in her Charge of
Discrimination, and she is filing the instant action within ninety days of the EEOC's issuance
and her receipt of the Notice of Right to Sue.

## COUNT I:
## DISCRIMINATION BASED ON RACE IN VIOLATION
## OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

112.

Plaintiff hereby pleads and incorporates by reference all preceding paragraphs 1 through 111 as if the same and fully set forth herein.

113.

Under Title VII of the Civil Rights Act of 1964 and the Civil Rights Act of 1866, it is unlawful for an employer to discriminate against any individual with respect to his or her compensation, terms, conditions, or privileges of employment because of such person's race. , 42 U.S.C. § 2000e and 42 U.S.C. § 1981.

114.

Plaintiff is considered in a protected class as her race is Black or African American.

115.

As alleged herein, Plaintiff was qualified with their position that she held with the GEICO and her performance was exemplary at all times.

116.

As alleged herein, beginning in or around January 2019 through February 2021, Plaintiff endured several retaliatory acts, discriminative treatment, hinderance in performance, denied promotional opportunities, and was ultimately constructively discharged. These actions suggested they were motivated by Plaintiff's race.

117.

Plaintiff will prove that Defendants stated reasons were pretextual and that the Defendant's actions were indeed motivated by Plaintiff's race.

118.

Plaintiff has been injured by Defendant discrimination based on race against her, and she is entitled to all damages allowed under the Title VII of the Civil Rights Act, including back pay, including fringe benefits, front pay, injunctive relief, compensatory and punitive damages, in the amount of not less than $180,000, or amount otherwise permitted by statute, and attorney's fees and costs of litigation, all in an amount to be proven at trial.

## COUNT II:
## RACIAL DISCRIMINATION IN VIOLATION OF SECTION 1981

119.

Plaintiff hereby pleads and incorporates by reference all of the allegations contain in Paragraphs 1 through 111, as if the same and fully set forth herein.

120.

As a Black or African America, Plaintiff has the same right to make and create curriculum development materials as her White counterparts, which cannot otherwise be impaired by nongovernmental discrimination or impairment under color of State law. 42 U.S.C. § 1981

121.

Courts have long recognized that employment relationships, even those that are at-will, are considered contracts for the purposes of Section 1981.

122.

For the reasons set forth in Count I, supra, which are incorporated herein, GEICO is liable to Plaintiff for infringing on her right to create curriculum development materials and to the full and equal benefit of all laws as is enjoyed by white citizens. As a result, said GEICO is liable under Section 1981, and Plaintiff is entitled to all damages available to her in amount to be proven at trial.

123.

As alleged in Count I, Defendant intentionally discriminated against Plaintiff on the basis of race and by infringing upon Plaintiff's right to make and enforce contracts and to have the full and equal benefit of all laws as is enjoyed by white citizens. As a result, Defendant is liable under Section 1981, and Plaintiff is entitled to all damages available to her on an amount to be proven at trial.

**COUNT III:**
**FAIR EMPLOYMENT DISCRIMINATION**
**IN VIOLATION OF THE MARYLAND FAIR EMPLOYMENT PRACTICES ACT**

124.

Plaintiff hereby pleads and incorporates by reference all of the allegations contain in Paragraphs 1 through 111, as if the same and fully set forth herein.

125.

Under the Maryland Fair Employment Practices Act (FEPA), it is unlawful for an employer to discriminate in employment based on race, color, sex, and other protected classes.

126.

As alleged herein, Plaintiff is a covered employee under the Maryland Fair Employment Practices Act (FEPA), and GEICOs are considered covered employers under the same. *See* (Maryland State Government Article § 20-601(b)).

127.

As alleged herein, beginning in or around January 2019 through February 2021, Plaintiff endured several retaliatory acts, discriminative treatment, hinderance in performance, denied promotional opportunities and account of her race, color sex, and other protected classes.

128.

As alleged herein, Plaintiff was qualified in the position that she held with the Defendant and her performance was exemplary at all times.

129.

As alleged herein, GEICO engaged in discriminatory failure to promote or provide equal pay (§ 20-606(a)).

130.

The Plaintiff was denied promotions while less qualified Caucasian employees, such as Alex Gillespie were promoted to permanent positions and received pay raises during lateral moves, contrary to company policy

131.

The Plaintiff's performance ratings were unjustly recalibrated, making her appear less qualified than her peers during job applications and performance ratings.

132.

Similarly situated colleagues like Benjamin Pacha [Caucasian Male] were moved into permanent positions without applying, while the Plaintiff was forced to apply for roles and denied similar opportunities.

133.

The Plaintiff's pre-work plans for a job application were allegedly provided to a less experienced Caucasian colleague, Alex Gillespie, to help her succeed in the role for which the plaintiff was ultimately passed over.

134.

The plaintiff endured a pattern of hostile behavior from her manager, Allen Trawick, including:

- Public humiliation during a training session Intimidation in close proximity during a break, making her feel threatened

135.

Despite complaints to HR and leadership, Allen Trawick remained in his position for almost an entire year before being demoted after another employee (a Caucasian male) filed a similar complaint.

136.

HR failed to take proactive steps to remove the Plaintiff from the hostile environment or address ongoing retaliation.

137.

After filing complaints, the Plaintiff experienced:

- Exclusion from meetings and project opportunities
- Lack of support or feedback on job applications, which negatively impacted her chances of securing new roles
- A rescinded offer for a permanent position previously promised by her manager, creating unnecessary career instability

138.

These retaliatory actions culminated in her being given the ultimatum of accepting a demotion with a $20,000 pay cut or facing termination, leading to her forced resignation in February 2021.

139.

Plaintiff has been injured by GEICO's discrimination based on race, color, sex, and other protected classes and entitled to all damages allowed under the Maryland Fair Employment Practices Act (FEPA), including back pay, including fringe benefits, front pay or reinstatement, injunctive relief, liquidated damages, and attorney's fees and costs of litigation, all in an amount to be proven at trial.

**COUNT IV:**
**RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT**

140.

Plaintiff hereby pleads and incorporates by reference all of the allegations contain in Paragraphs 1 through 111, as if the same and fully set forth herein.

141.

Under the Title VI of the Civil Rights Act, it is unlawful for an employer to retaliate against an employee because she has opposed any unlawful employment practice. See 42 U.S.C. § 2000e-3(a).

142.

As alleged herein, in March 2019 and October 2019, Plaintiff submitted Ethics line complaints that they were being discriminated against, targeted, and treated disproportionately to their peers. Plaintiff reached out to HR department multiple times, and even again in July 2020, advising more disparate and discriminatory behaviors were endured.

143.

After each of the Plaintiff's complaints concerning Allen Trawick retaliatory behaviors, Plaintiff continued to be subjected to further adverse reactions regarding their performance and promotability, and ultimately constructively discharging the Plaintiff effective March 12, 2021.

144.

Moreover, Defendant failed to properly investigate or take timely, if any, actions concerning Plaintiff's complaints they were being subjected to ongoing discrimination.

145.

Plaintiff has been injured by Defendants retaliatory conduct in response to Plaintiff's participation in protect activities. Plaintiff is entitled to all damages allowed under the Title VII of the Civil Rights Act, including back pay, including fringe benefits, front pay, injunctive relief, compensatory and punitive damages, in the amount of not less than $180,000, or amount otherwise permitted by statute, and attorney's fees and costs of litigation, all in an amount to be proven at trial.

## COUNT V:
## RETALIATION IN VIOLATION OF THE MARYLAND FAIR EMPLOYMENT PRACTICES ACT

146.

Plaintiff hereby pleads and incorporates by reference all of the allegations contain in Paragraphs 1 through 111, as if the same and fully set forth herein.

147.

Under the Maryland Fair Employment Practices Act, it prohibits employers from retaliating against employees who oppose discriminatory practices or participate in investigations.

148.

As alleged herein, Plaintiff is a covered employee under the Maryland Fair Employment Practices Act (FEPA), and GEICOs are considered covered employers under the same. *See* (Maryland State Government Article § 20-601(b)).

149.

As alleged herein, in March 2019 and October 2019, Plaintiff submitted Ethics line complaints that they were being discriminated against, targeted, and treated disproportionately to their peers. Plaintiff reached out to HR department multiple times, and even again in July 2020, advising more disparate and discriminatory behaviors were endured based on her race, color sex, and other protected classes.

150.

After each of the Plaintiff's complaints concerning Allen Trawick retaliatory behaviors based on race, color sex, and other protected class caused the Plaintiff to be subjected to further adverse reactions regarding their performance and promotability, and ultimately constructively discharging the Plaintiff effective March 12, 2021.

151.

Moreover, Defendant failed to properly investigate or take timely, if any, actions concerning Plaintiff's complaints they were being subjected to ongoing discrimination based on race, color sex, and other protected classes.

152.

Plaintiff has been injured by Defendant's retaliation and is entitled to all damages allowed under the Maryland Fair Employment Practices Act (FEPA), including back pay, including fringe

benefits, front pay or reinstatement, injunctive relief, liquidated damages, and attorney's fees and costs of litigation, all in an amount to be proven at trial.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of the Civil Procedure, Plaintiff demands trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Ms. Black respectfully requests of this Court and respectfully prays for the following relief:

a. The Summons and Process be issued to Defendant Government Employees Insurance Company, and that said Defendant be served as provided by law;
b. That this matter be tried before a jury
c. That judgment be awarded for and in favor of Plaintiff and against Defendant on Count I for Discrimination Based on Race; and grant Plaintiff all relief allowable under Title VII of the Civil Rights Act of 1964;
d. That judgment be awarded for and in favor of Plaintiff and against Defendant on Count II for Discrimination Based on Race; and grant Plaintiff all relief allowable under Section 1981;
e. That judgment be awarded for and in favor of Plaintiff and against Defendant on Count III for Discrimination Based on Maryland Fair Employment Practices Act (FEPA);
f. That judgment be awarded for and in favor of Plaintiff and against Defendant Government Employees Insurance Company on Count IV for Retaliation, and grant Plaintiff all relief allowable under Title VII of the Civil Rights Act of 1964;
g. The judgement be awarded for and in favor of Plaintiff and against Defendant Government Employees Insurance Company on Count V for Retaliation, and grant Plaintiff all relief allowable under the Maryland Fair Employment Practices Act (FEPA); and,
h. Grant such other relief as the Court deems just, proper and equitable.


Very Respectfully submitted, this 6th Day of December 2024.


Andrea M. Black
18640 Pier Point Pl
Montgomery Village, MD 20886
(757) 893.0481
blackandreamarie@gmail.com

## VI.    Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.    For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served.  I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: _DECEMBER 6th_, 20_24_.

Signature of Plaintiff     _Andrea M Black_

Printed Name of Plaintiff  Andrea Marie Black

*(If more than one plaintiff is named in the complaint, attach an additional certification and signature page for each additional plaintiff.)*

### B.    For Attorneys

Date of signing: _____, 20__.

Signature of Attorney      _____

Printed Name of Attorney   _____

Bar Number                 _____

Name of Law Firm           _____

Address                    _____

Telephone Number           _____

E-mail Address             _____