**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| ANDREA M. BLACK, ) | |
| ) | |
| Plaintiff, *pro se*, ) | Civil Action No. 8:24-cv-03531-LKG |
| ) | |
| v. ) | Dated: January 29, 2026 |
| ) | |
| GOVERNMENT EMPLOYEES ) | |
| INSURANCE COMPANY, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## <u>MEMORANDUM OPINION</u>

## I.    INTRODUCTION

In this employment discrimination action, the Plaintiff *pro se*, Andrea M. Black, brings discrimination and retaliation claims, upon the bases of race and sex, against the Defendant, Government Employees Insurance Company ("GEICO"), arising from her employment with GEICO, pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*, 42 U.S.C. § 1981 ("Section 1981"), and the Maryland Fair Employment Practice Act ("MFEPA"). *See generally* ECF No. 1. GEICO has moved to dismiss the complaint, pursuant to Fed. R. Civ. P. 12(b)(1) and (b)(6). ECF Nos. 12 and 12-1. The motion is fully briefed. ECF Nos. 12, 14 and 15. No hearing is necessary to resolve the motion. L.R. 105.6 (D. Md. 2025). For the reasons that follow, the Court: (1) **GRANTS-in-PART and DENIES-in-PART** GEICO's motion to dismiss (ECF No. 12); (2) **DISMISSES** the following allegations with respect to the Plaintiff's Title VII and MFEPA claims: (a) the January 2019 conduct by the Plaintiff's then-supervisor, Allen Trawick; (b) the March 5, 2019, cancellation of a team meeting with a separate meeting held without the Plaintiff and later informally taking the Plaintiff off of a project and reassigning the project, by Allen Trawick; (c) the Plaintiff's March 7, 2019, FMLA leave; (d) the May 20, 2019, closing of the Plaintiff's ethics complaint against Allen Trawick; (e) the 2019 initial denial of the Plaintiff from proceeding with a job application submitted *via* GEICO's internal job portal; and (f) the October 16, 2019, cut off of the Plaintiff's presentation; (3) **DISMISSES** the following allegations with respect to the Plaintiff's Section 1981 claims: (a)

the January 2019 conduct by the Plaintiff's then-supervisor, Allen Trawick; (b) the March 5, 2019, cancellation of a team meeting with a separate meeting held without the Plaintiff and later informally taking the Plaintiff off of a project and reassigning the project by Allen Trawick; (c) the Plaintiff's March 7, 2019, FMLA leave; (d) the May 20, 2019, closing of the Plaintiff's ethics complaint against Allen Trawick; (e) the 2019 initial denial of the Plaintiff from proceeding with a job application submitted *via* GEICO's internal job portal; (f) the October 16, 2019, cut off of the Plaintiff's presentation; (g) the July 15, 2020, non-selection for the Supervisor – Leadership Training Development position; and (h) the August 2020, GEICO performance rating recalibration; (4) **DISMISSES** the Plaintiff's Title VII and MFEPA claims related to Benjamin Pacha in Counts I, III, IV and V of the complaint; (5) **DISMISSES** the Plaintiff's allegations regarding GEICO's performance rating recalibration in connection with her discrimination claims in Counts I, II and III of the complaint; (6) **DISMISSES** the Plaintiff's constructive discharge claim in Counts I, II and III of the complaint; and (7) **DISMISSES** the Plaintiff's retaliation claims in Counts IV and V of the complaint.

## II.    FACTUAL AND PROCEDURAL BACKGROUND[1]

### A.  Factual Background

In this employment discrimination action, the Plaintiff brings race and sex-based discrimination and retaliation claims against GEICO, arising from her employment with GEICO, pursuant to Title VII, Section 1981 and the MFEPA. *See generally* ECF No. 1. The Plaintiff is proceeding without the assistance of counsel in this matter and she asserts the following claims against GEICO in the complaint: (1) discrimination based on race in violation of Title VII (Count I); (2) discrimination based on race in violation of Section 1981 (Count II); (3) discrimination based on race, color and/or sex in violation of the MFEPA (Count III); (4) retaliation in violation of Title VII (Count IV); and (5) retaliation in violation of the MFEPA (Count V).[2] *Id.* at ¶¶ 112-152. As relief, the Plaintiff seeks, among other things, certain

---

[1] The facts recited herein are taken from the complaint and the attachments thereto; GEICO's motion to dismiss and the memorandum in support thereof; and the Plaintiff's response in opposition to GEICO's motion to dismiss. ECF Nos. 1, 1-1, 1-2, 12, 12-1 and 14-2. Unless otherwise stated, the facts recited herein are undisputed.

[2] In her response in opposition to GEICO's motion to dismiss, the Plaintiff states that she also brings a hostile work environment/harassment claim in this case under the MFEPA. ECF No. 14 at 2.

injunctive relief and to recover back pay, front pay and monetary damages from GEICO. *Id.* at Prayer for Relief.

The Parties

The Plaintiff is a resident of the State of Maryland and was employed by GEICO from February 9, 2015, to February 25, 2021. *Id.* at ¶¶ 3, 8 and 104.

Defendant GEICO is an insurance company that is incorporated in the State of Maryland. *Id.* at ¶ 4.

Background

As background, the Plaintiff self-identifies as a Black female. *Id.* at ¶ 7. On February 9, 2015, the Plaintiff began her employment with GEICO in a "Management Development role." *Id.* at ¶¶ 8-9.

During the next four years of her employment with GEICO, the Plaintiff received several promotions and salary increases. *Id.* at ¶¶ 10-12. On January 7, 2019, the Plaintiff started a new position as a Talent Development Lead within GEICO's Management Academy in Maryland. *Id.* at ¶¶ 12-14 and 17. The Plaintiff's position was a rotational position, meaning it was "a temporary assignment generally not to exceed 24 months." *Id.* at ¶ 14. At that time, the Plaintiff was the only Black female on the team of three employees reporting to her then-supervisor, Allen Trawick. *Id.* at ¶ 18.[3]

Alleged Discrimination And Retaliation In 2019

The Plaintiff alleges that several GEICO employees, including Mr. Trawick, discriminated against her upon the basis of race and sex beginning in 2019. *See generally id.* Specifically, the Plaintiff alleges that, on January 19, 2019, she met with Mr. Trawick and told him that he lacked "professionalism and ethical conduct in their work behavior" and that this "was detrimentally impacting [her] and the overall team's productivity and work flow." *Id.* at ¶ 19. The Plaintiff also alleges that, subsequent to this meeting, she began to experience "an adverse work culture," including a "broader pattern of discriminatory conduct." *Id.* at ¶¶ 19-20.

In this regard, the Plaintiff alleges, among other things, that Mr. Trawick: (1) created his own work for a project assigned to the Plaintiff and did not use her submitted work; (2)

---

[3] The Plaintiff's charge of discrimination shows that Mr. Trawick is an African American male. ECF No. 1-1 at 28.

consistently provided feedback and opportunities to his other direct employees, but withheld the same from the Plaintiff; (3) cancelled a team meeting scheduled for March 5, 2019, and then held a separate meeting without the Plaintiff; and (4) informally took the Plaintiff off of a project and reassigned the project only to the Plaintiff's Caucasian female counterpart. *Id.* at ¶¶ 21-25. The Plaintiff further alleges that Mr. Trawick's actions created a "hostile work environment" at GEICO. *Id.* at 27. And so, the Plaintiff contends that she "went on a protected leave of absence under [the] Family and Medical Leave Act (FMLA) of 1993, to remove herself from the hostile work environment that she was experiencing from [Mr.] Trawick and other two coworkers at direction of Mr. Trawick" on March 7, 2019. *Id.*

While she was on FMLA leave, the Plaintiff filed an ethics complaint against Mr. Trawick *via* GEICO's online portal on March 14, 2019. *Id.* at ¶ 28. On March 27, 2019, the Plaintiff returned to work at GEICO, but she alleges that her relationship with Mr. Trawick did not improve. *See id.* at ¶ 29. In this regard, the Plaintiff alleges that Mr. Trawick and the Plaintiff engaged in a "work-related strenuous call regarding [the Plaintiff's] current tasks that rose to the level of harassment and continuously engineered a hostile work environment," on April 9, 2019, prompting her to log another record in her pending ethics complaint regarding Mr. Trawick on April 10, 2019. *Id.* at ¶¶ 32-33. GEICO closed the ethics complaint on May 20, 2019, and the Plaintiff continued to report to Mr. Trawick. *Id.* at ¶¶ 34-36.

The Plaintiff alleges that, thereafter, she continued to endure a hostile work environment and retaliatory conduct from Mr. Trawick and two of her co-workers. *Id.* at ¶ 39. In this regard, the Plaintiff alleges that Mr. Trawick initially denied her from proceeding with a job application submitted *via* GEICO's internal job portal, while allowing her Hispanic female co-worker to proceed with an application for the same role without an initial rejection. *Id.* at ¶¶ 41-44. The Plaintiff also alleges that, on October 16, 2019, Mr. Trawick cut off her presentation to a class of approximately 30 people, "attempted to intimidate [her] and undervalue what she was saying" in front of the class, and "attempted to remove [her] from presenting." *Id.* at ¶¶ 46-48.

In March 2020, Mr. Trawick left the Plaintiff's team. *Id.* at ¶¶ 63-64. And so, the Plaintiff began reporting to Brette Cox, a Caucasian male, in or around April 2020. *Id.* at ¶ 69.

<u>The Alleged Failure-to-Hire In 2020</u>

On May 26, 2020, the Plaintiff submitted an application for Supervisor – Leadership Training Development role in the GEICO Management Academy Department. *Id.* at ¶¶ 72 and

75. On July 15, 2020, Mr. Cox informed the Plaintiff that she was not selected for this position. *Id.* at ¶ 77.

The Plaintiff alleges that Alex Gillepsie, a Caucasian female who also worked in the GEICO Management Academy Department, was selected for the Supervisor position, despite having less tenure in the department and less experience than the Plaintiff. *Id.* at ¶¶ 78-79. The Plaintiff also alleges that "[i]t was not until [she] submitted her pre-work [that] the job posting [was] taken down" and that "she was prompted to apply for the role only to obtain her knowledge in the pre-work submitted . . . so that it would be provided" to the Caucasian female who was selected for the role. *Id.* at ¶ 80.

The Plaintiff alleges that she had ongoing one-on-one meetings with Mr. Cox between July and August 2020, during which Mr. Cox advised her that GEICO would move her into a lateral permanent position. *Id.* at ¶ 85. The Plaintiff also alleges that "based on this offer, [she] ceased her internal job search." *Id.* But the Plaintiff alleges that she "learned the permanent position offered to her previously by Mr. Cox was rescinded" on December 17, 2020. *Id.* at ¶ 91. And so, the Plaintiff alleges that the "withdrawal of the job offer, coupled with the failure to provide a suitable alternative, . . . created unnecessary barriers to [her] career advancement, underscoring a pattern of discriminatory intent." *Id.* at ¶ 92.

<u>Alleged Discrimination And Retaliation In 2021</u>

On January 6, 2021, the Plaintiff was informed that her rotational position would end in February 2021, and that she would face a grade and salary demotion, or termination, unless she secured a permanent role within GEICO. *Id.* at ¶ 98. The Plaintiff alleges that her colleague, Benjamin Pacha, a Caucasian male, "was not only allowed to stay in a non-exempt status longer than [her], but was also given a job that was never available to [her] or posted on GEICO's job posting site." *Id.* at ¶ 102. Given this, the Plaintiff alleges that, unlike Mr. Pacha, she was threatened with termination and demotion. *Id.* at ¶ 103. And so, the Plaintiff alleges that she was constructively discharged from GEICO on February 25, 2021, and that she emailed a resignation letter to Mr. Cox, "due to imminent financial harm and not being provided the same treatment to be moved into a lateral permanent position." *Id.* at ¶ 104.

<u>The Plaintiff's Charge Of Discrimination</u>

On February 25, 2021, the Plaintiff  filed a charge of discrimination with the Montgomery County Office of Human Rights ("MCOHR") and the Equal Employment

Opportunity Commission ("EEOC"), alleging that she had been subjected to continuing discrimination based on race, color, and sex, as well as retaliation. *Id.* at ¶ 108; *see also* ECF No. 1-1 at 27-31. In the Charge, the Plaintiff alleges that she was "subject to discrimination, retaliation and discriminat[ion] and retaliatory harassment on the basis of her sex [Female] and race [African American]" when:

> 1. During the period March 1, 2020[,] through August 1, 2020, Complainant was not selected for four separate positions she applied to by Cox.
>
> 2. During the period March 1, 2020[,] to the present, Cox failed to place Complainant into a non-rotational position.
>
> 3. During the period March 1, 2020[,] to the present Cox and Ahmed failed to give Complainant a lateral promotion and merit-based salary increase.
>
> 4. Cox and Ahmed inexplicably lowered the "Manager Observation" section of Complainant's quarterly rating, the only section where the rating is at the manager's discretion, for the last three quarters of 2020.
>
> 5. Cox told Complainant in December 2020 that because she could not be placed into a non-rotational position, she must accept a demotion, including a $20,000.00 salary decrease, or lose her job.

ECF No. 1-1 at 31. On or about August 7, 2024, the MCOHR issued a Determination and Notice, which the Plaintiff alleges she received from her counsel at some point thereafter. ECF No. 1 at ¶ 110. On or about September 5, 2024, the EEOC issued a Notice of Right to Sue, which the Plaintiff alleges she received *via* United States Postal Mail on September 9, 2024. *Id.*; *see also* ECF No. 14-2 at 11.

The Plaintiff contends that GEICO violated Title VII and the MFEPA, by discriminating against her because of her race and sex, and that she "endured several retaliatory acts, discriminative treatment, hindrance in performance, denied promotional opportunities, and was ultimately constructively discharged" by GEICO and that GEICO's actions were motivated by her race. *Id.* at ¶¶ 114-116. The Plaintiff also contends that GEICO violated Title VII and the MFEPA by retaliating against her, because she submitted ethics line complaints reporting the discriminatory treatment of her by Mr. Trawick and her peers. *Id.* at ¶¶ 140-152.

Lastly, the Plaintiff contends that GEICO violated Section 1981 by "infringing on her right to create curriculum development materials and to the full and equal benefit of all laws as is enjoyed by white citizens." *Id.* at ¶ 122. And so, the Plaintiff seeks, among other things, certain

injunctive relief and to recover  back pay, front pay and monetary damages from GEICO.  *Id.* at Prayer for Relief.

### B.  Relevant Procedural History

The Plaintiff commenced this matter on December 6, 2024.  ECF No. 1.  On April 30, 2025, GEICO filed a motion to dismiss, pursuant to Fed. R. Civ. P. 12(b)(1) and (b)(6), and a memorandum in support thereof.  ECF Nos. 12 and 12-1.  On May 31, 2025, the Plaintiff filed a response in opposition to GEICO's motion to dismiss.  ECF No. 14.  On June 11, 2025, GEICO filed a reply brief.  ECF No. 15.

GEICO's motion to dismiss having been fully briefed, the Court resolves the pending motion.

## III.  LEGAL STANDARDS

### A.  *Pro Se* Litigants

The Plaintiff is proceeding in this matter without the assistance of counsel.  And so, the Court must construe the complaint liberally.  *See Hughes v. Rowe*, 449 U.S. 5, 9-10 (1980).  But, in doing so, the Court cannot disregard a clear failure to allege facts setting forth a cognizable claim.  *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990); *see also Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985) (stating a district court may not "conjure up questions never squarely presented"); *Bell v. Bank of Am., N.A.*, No. 13-478, 2013 WL 6528966, at *1 (D. Md. Dec. 11, 2013) ("Although a *pro se* plaintiff is general[ly] given more leeway than a party represented by counsel, . . . a district court is not obliged to ferret through a [c]omplaint . . . that is so confused, ambiguous, vague or otherwise unintelligible that its true substance, if any, is well disguised.") (quotations and citations omitted).  And so, if a plaintiff fails to allege sufficient facts setting forth a cognizable claim, the Court must dismiss the complaint.

### B.  Fed. R. Civ. P. 12(b)(1)

A motion to dismiss for lack of subject-matter jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(1), is a challenge to the Court's "competence or authority to hear the case."  *Davis v. Thompson*, 367 F. Supp. 2d 792, 799 (D. Md. 2005).  The United States Supreme Court has explained that subject-matter jurisdiction is a "threshold matter" that is "inflexible and without exception."  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1995) (quoting *Mansfield, C. & L.M.R. Co. v. Swan*, 111 U.S. 379, 382 (1884)).  And so, an objection that the

Court lacks subject-matter jurisdiction "may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006).

The United States Court of Appeals for the Fourth Circuit has also explained that the plaintiff bears the burden of establishing that subject-matter jurisdiction exists. *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999) (citing *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991)). Given this, the Court "regard[s] the pleadings as mere evidence on the issue[] and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment," when deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1). *Id.* (citation omitted). And so, if a plaintiff "fails to allege facts upon which the court may base jurisdiction," then the Court should grant a motion to dismiss for lack of subject-matter jurisdiction. *Davis*, 367 F. Supp. 2d at 799.

### C. Fed. R. Civ. P. 12(b)(6)

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible when "the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). When evaluating the sufficiency of a plaintiff's claims under Fed. R. Civ. P. 12(b)(6), the Court accepts the factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009); *Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005) (citations omitted). But, the complaint must contain more than "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." *Nemet Chevrolet*, 591 F.3d at 255. And so, the Court should grant a motion to dismiss for failure to state a claim if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *GE Inv. Private Placement Partners II, L.P. v. Parker*, 247 F.3d 543, 548 (4th Cir. 2001) (quoting *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 249-50 (1989)).

### D.  Title VII Claims

Title VII prohibits employment discrimination based on race, color, religion, sex and national origin.  *See* 42 U.S.C. § 2000e.[4]  In this regard, Title VII requires that a plaintiff file a charge of discrimination with the EEOC before filing suit in this Court.  42 U.S.C. § 2000e-5(f)(1) (permitting civil suit by the "person claiming to be aggrieved" after filing of a charge with the EEOC and upon receipt of a right-to-sue letter); *see also Puryear v. County of Roanoke*, 214 F.3d 514, 518 (4th Cir. 2000) ("[T]he aggrieved person may initiate a civil action based on the Title VII claims made in her EEOC charge only after receipt of a right-to-sue letter."); *Miles v. Dell, Inc.*, 429 F.3d 480, 491 (4th Cir. 2005).  Upon receipt of a right-to-sue letter from the EEOC, a plaintiff must file suit within 90 days.  *Fisher v. Md. Dep't of Hous. & Cmty. Dev.*, 32 F. Supp. 2d 257, 264 (D. Md. 1998) ("[F]ailure to file suit within ninety days after receipt of a notice from the EEOC renders a plaintiff's action untimely."); *Weathersbee v. Balt. City Fire Dep't*, 970 F. Supp. 2d 418, 427 (D. Md. 2013) (noting that "the ninety-day limit is strictly enforced.").  "In the absence of evidence of the date of receipt, a right-to-sue letter is presumed to have been received by the plaintiff three days after it was issued and mailed, pursuant to Fed. R. Civ. P. 6(d)."  *Weathersbee*, 970 F. Supp. 2d at 426-27 (citing *Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 148 n.1 (1984) (applying presumption that notice is received three days after issuance, and citing former Fed. R. Civ. P. 6(e))).

Title VII also requires that an aggrieved party file a charge with the EEOC "within one hundred and eighty days after the alleged unlawful employment practice occurred."  42 U.S.C. § 2000e-5(e)(1); *Fort Bend County v. Davis*, 587 U.S. 541, 544-45 (2019).  Typically, "a plaintiff

---

[4] The MEFPA prohibits employers from engaging in "unlawful employment practices."  *See* Md. Code Ann., State Gov't § 20-606(a)(1)(i).  The MFEPA "is the state law analogue of Title VII."  *Alexander v. Marriott Int'l, Inc.*, No. 09-2402, 2011 WL 1231029, at *6 (D. Md. Mar. 29, 2011).  Under the MFEPA, "a complainant may bring a civil action . . . alleging an unlawful employment practice, if: (1) the complainant initially filed a timely administrative charge . . .; (2) at least 180 days have elapsed since the filing . . .; and (3) the civil action is filed within 2 years after the alleged unlawful employment practice occurred."  Md. Code Ann., State Gov't. § 20-1013(a).  And so, the MFEPA requires that a plaintiff file an employment discrimination action within two years of an alleged unlawful employment practice, provided that plaintiff's administrative charge was timely under federal or local law.  *See id.*  When a plaintiff has not asserted a distinction between a federal and Maryland discrimination claims, the Court may apply the same standards to the analysis of the state and federal discrimination claims.  *See Blakes v. City of Hyattsville*, 909 F. Supp. 2d 431, 444 (D. Md. 2012).

must file an administrative charge with the EEOC within 180 days of the alleged misconduct." *Williams v. Giant Food Inc.*, 370 F.3d 423, 428 (4th Cir. 2004) (citing 42 U.S.C. § 2000e-5(e)(1)). But, "[t]his period is extended to 300 days in a deferral state, one in which 'state law proscribes the alleged employment practice and the charge has initially been filed with a state deferral agency.'" *Valderrama v. Honeywell Tech. Sols., Inc.*, 473 F. Supp. 2d 658, 662 n.4 (D. Md. 2007) (quoting *Williams*, 370 F.3d at 428). If a plaintiff "fails to file an administrative charge with the EEOC within one hundred eighty . . . days after an alleged discriminatory act occurs (or three hundred . . . days if the aggrieved person presented the claim to a state deferral agency), then the EEOC charge is not considered timely filed." *Hentosh v. Old Dominion Univ.*, 767 F.3d 413, 417 (4th Cir. 2014) (citing 42 U.S.C. § 2000e-5(e)(1)).

The Fourth Circuit has recognized that the exhaustion requirement under Title VII "is not simply a formality to be rushed through so that an individual can quickly file [a] subsequent lawsuit." *Chacko v. Patuxent Inst.*, 429 F.3d 505, 510 (4th Cir. 2005). Rather, together with the agency investigation and settlement process it initiates, this requirement "reflects a congressional intent to use administrative conciliation as the primary means of handling claims, thereby encouraging quicker, less formal, and less expensive resolution of disputes." *Balas v. Huntington Ingalls Indus., Inc.*, 711 F.3d 401, 407 (4th Cir. 2013) (quoting *Chris v. Tenet*, 221 F.3d 648, 653 (4th Cir. 2000)). The Supreme Court has also held that Title VII's charge-filing requirement "is a processing rule, albeit a mandatory one, not a jurisdictional prescription delineating the adjudicatory authority of courts." *Fort Bend County*, 587 U.S. at 551. And so, the Court cannot consider matters that were not properly raised during the EEOC process, even when a plaintiff has filed a timely claim with the EEOC. *See, e.g., Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 963 (4th Cir. 1996) ("Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit."); *Mile*s, 429 F.3d at 491.[5]

---

[5] To determine whether a plaintiff has "properly alleged [a claim] before the EEOC" in a manner satisfying the exhaustion requirement, courts "may look only to the charge filed with that agency." *Balas v. Huntington Ingalls Indus., Inc.*, 711 F.3d 401, 408 (4th Cir. 2013); *see also Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962-63 (4th Cir. 1996) ("The allegations contained in the administrative charge of discrimination generally operate to limit the scope of any subsequent judicial complaint."); *Chacko v. Patuxent Inst.*, 429 F.3d 505, 506 (4th Cir. 2005) ("This charge frames the scope of future litigation.").

There are two methods for proving intentional discrimination in employment under Title VII: (1) through direct or indirect evidence of intentional discrimination, or (2) through circumstantial evidence under the three-step, burden-shifting scheme set forth by the Supreme Court in *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973). For the first method, an employee may utilize "ordinary principles of proof using any direct or indirect evidence relevant to and sufficiently probative of the issue." *Brinkley v. Harbour Recreation Club*, 180 F.3d 598, 606-07 (4th Cir. 1999) (quoting *Tuck v. Henkel Corp.*, 973 F.2d 371, 374 (4th Cir. 1992)). If direct or indirect evidence of intentional discrimination is lacking, a plaintiff may proceed under *McDonnell-Douglas*. *See Tuck*, 973 F.2d at 375. Under the *McDonnell-Douglas* framework, a plaintiff must first establish a prima facie case of discrimination. *See McDonnell Douglas Corp.*, 411 U.S. at 802.

Although, a "plaintiff is not required to plead a prima facie case of discrimination under Title VII to survive a motion to dismiss," the plaintiff "must allege sufficient facts "to satisfy the elements of a cause of action created by [the applicable] statute." *Felder v. MGM Nat'l Harbor, LLC*, No. 20-2373, 2022 WL 2871905, at *1 (4th Cir. July 21, 2022). And so, the plaintiff must "plausibly allege that" the adverse employment action was taken "'because of' her race, color, or sex to withstand a motion to dismiss." *Id.* (quoting *McCleary-Evans v. Md. Dep't of Transp.*, 780 F.3d 582, 584-85 (4th Cir. 2015)). "An adverse employment action is a discriminatory act that adversely affect[s] the terms, conditions, or benefits of the plaintiff's employment." *Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 219 (4th Cir. 2007) (internal quotations and citations omitted).

The Plaintiff appears to assert, among other things, disparate treatment, hostile work environment, non-selection discrimination and retaliation claims in the complaint. The Fourth Circuit has long held that disparate treatment occurs when an employer treats certain people less favorably than others on the basis of a protected classification such as race. *Carter v. Ball*, 33 F.3d 450, 456 n.7 (4th Cir. 1994). And so, to state a disparate treatment claim, a plaintiff must allege facts to show: (1) membership in a protected class; (2) satisfactory work performance; (3) an adverse employment action; and (4) different treatment from similarly situated employees outside the protected class. *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010).

To survive dismissal of a hostile work environment claim based on a protected characteristics, a plaintiff "must offer facts that plausibly support inferences that 'she was subjected to (1) unwelcome conduct, (2) based on her race [or national origin] or sex, that was (3) severe or pervasive enough to make her work environment hostile or abusive and (4) imputable to [] her employer.'" *Marie Laurent-Workman v. Wormuth*, (4th Cir. 2022) (quoting *Bazemore v. Best Buy*, 957 F.3d 195, 200 (4th Cir. 2020)).[6]  The Plaintiff must also allege that her protected characteristic under Title VII was the "but for" cause of the alleged harassment. *Id.*; *see also Young v. Giant Food Stores, LLC*, 108 F. Supp. 3d 301, 310 (D. Md. 2015) (the plaintiff must also allege facts to present a particularized basis for alleging that discriminatory conduct was because of membership in a protected class).  "A Title VII plaintiff seeking to recover for a hostile work environment can recover for acts occurring even beyond that period, as long as at least a portion of the hostile work environment occurred within the relevant limitations period," under the continuing violation doctrine.  *White v. BFI Waste Servs, LLC*, 375 F.3d 288, 292-93 (4th Cir. 2004) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122 (2002)); *see also Perkins v. In'l Paper Co.*, 936 F.3d 196, 209 n.5 (4th Cir. 2019) ("Unlike claims for disparate treatment and retaliation, the continuing violation doctrine applies to a hostile work environment claim.").

In addition, to state a discrimination claim based upon non-selection or failure-to-hire, a plaintiff must allege facts to show: (1) membership in a protected class; (2) she applied for a job which the employer was seeking applications; (3) she was qualified for the position; and (4) she was rejected from the position under circumstances giving rise to an inference of discrimination. *Brown v. McLean*, 159 F.3d 898, 902 (4th Cir. 1998).  Lastly, to state a retaliation claim under Title VII, a plaintiff must allege facts to show that: (1) she engaged in protected activity; (2) the employer took adverse action against her; and (3) a causal relationship existed between the

---

[6] The Plaintiff brings her hostile work environment/harassment claim under the MFEPA, which does not require "severe or pervasive conduct."  *See* Md. Code Ann., State Gov't § 20-601(h)(1); *see also* ECF No. 14 at 2 (Plaintiff clarifying that her hostile work environment claim is brought under the MFEPA).  To state a hostile work environment/harassment claim under the MFEPA, the Plaintiff must allege facts to show (1) "the conduct is based on race, color, religion, ancestry or national origin, sex, age, marital status, sexual orientation, gender identity, disability, or military status" and (2) "based on the totality of the circumstances, the conduct unreasonably creates a working environment that a reasonable person would perceive to be abusive or hostile."  *See* Md. Code Ann., State Gov't § 20-601(h)(1).

protected activity and the adverse employment action.  *Foster v. Univ. of Md.-Eastern Shore*, 787 F.3d 243, 250 (4th Cir. 2015). [7] The Supreme Court has held that a Title VII plaintiff "must show that a reasonable employee would have found the challenged action materially adverse . . . which . . . means it . . . might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006); *see also Laurent*-Workman, 54 F.4th at 213 (explaining that the Supreme Court widened the scope of conduct that can constitutes an adverse action by an employer from solely conduct that affects an employee's "compensation, terms, conditions, or privileges of employment").  If a Title VII plaintiff establishes a *prima facie* case of retaliation, "the burden shifts to the employer to show that it took adverse action for a legitimate non-retaliatory reason." *Roberts*, 998 F.3d at 122 (citation omitted).  And so, if the employer provides a legitimate non-retaliatory reason, "the burden shifts back to the plaintiff to rebut the employer's evidence by demonstrating the employer's purported non-retaliatory reasons were pretext for discrimination." *Id.*

### E.  Section 1981 And Constructive Discharge Claims

Title 42, United States Code, Section 1981 provides that:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a).  These rights "are protected against impairment by nongovernmental discrimination and impairment under color of State law." *Id.* at § 1981(c).  Section 1981 claims are subject to a four-year statute of limitations.  *See White v. BFI Waste Servs., LLC*, 375 F.3d 288, 291-92 (4th Cir. 2004).

---

[7] The Fourth Circuit has held that a Title VII plaintiff "may prove a Title VII retaliation claim either through direct evidence of retaliatory animus or via the application of the *McDonnell Douglas* burden-shifting framework." *Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 122 (4th Cir. 2021) (citation omitted).  If a plaintiff can establish a prima facie case of retaliation, the burden then shifts to the employer to show that its purportedly retaliatory action was in fact the result of a legitimate non-retaliatory reason. *Id.* (citation omitted).  If the employer makes this showing, the burden shifts back to the plaintiff to rebut the employer's evidence by demonstrating that the employer's purported nonretaliatory reasons were pretextual. *Id.* (citations omitted).

Lastly, to state a claim for constructive discharge, a plaintiff must allege facts to show that an "objective intolerability" in the workplace, meaning circumstances "so intolerable that a reasonable person would resign." *Doe v. Grmi, Inc.*, No. 24-cv-1368, 2024 WL 3495779, at *2 (D. Md. July 22, 2024) (quoting *Chapman v. Oakland Living Ctr., Inc.*, 48 F.4th 222, 235 (4th Cir. 2022)). This Court has held that "[i]ntolerability is assessed by the objective standard of whether a reasonable person in the employee's position would have felt compelled to resign." *Id.* And so, difficult or unpleasant working conditions, without more, are not so intolerable as to compel a reasonable person to resign. *See id.* (citing *Int'l Paper Co.*, 936 F.3d at 212).

## IV.    ANALYSIS

GEICO has moved to dismiss this employment discrimination case, pursuant to Fed. R. Civ. P. 12(b)(1) and (b)(6), upon several grounds. First, GEICO argues that the Plaintiff fails to state plausible claims under Title VII, the MFEPA and Section 1981, because: (1) the Plaintiff's Title VII claims are untimely; (2) any alleged adverse acts before May 1, 2020, are untimely under Title VII and the MFEPA; (3) any alleged adverse acts before December 6, 2020, are untimely under Section 1981; (4) the Plaintiff failed to administratively exhaust her claim based on alleged adverse acts related to Mr. Pacha; and (5) the Plaintiff fails to state a plausible discrimination claim with regards to the remaining adverse acts alleged in the complaint, because: (a) the Plaintiff fails to allege facts to support a reasonable inference that Mr. Cox was motivated by race or sex bias when he selected a Caucasian female employee for the Supervisor – Leadership Training Development position; (b) the Plaintiff fails to allege facts to show that the selected employee was similarly situated to her; and (c) the Plaintiff only speculates that she was more qualified than the person hired for the position. ECF No. 12-1 at 16. Second, the GEICO argues that the Plaintiff also fails to state a plausible retaliation claim under Title VII and the MFEPA, because: (1) the Plaintiff's claims are untimely; (2) any alleged adverse acts before May 1, 2020, are untimely under Title VII and the MFEPA; (3) the Plaintiff failed to administratively exhaust her claim based on alleged adverse acts related to Mr. Pacha; and (4) the Plaintiff fails to state a plausible retaliation claim with regards to her remaining adverse acts alleged in the complaint, because she did not engage in a protected activity and cannot show a plausible causal connection. *Id.* at 22-26. Lastly, GEICO argues that the Plaintiff's hostile work environment/harassment claim under the MFEPA is not plausible, because she fails to allege that Mr. Trawick took any action based on her race, color or sex, and she fails to allege anything

more than ordinary instances of workplace conflict in the complaint. *Id.* at 26-28. And so, GEICO requests that the Court dismiss the complaint. *Id.* at 30.

The Plaintiff counters that the Court should not dismiss the complaint, because she states plausible discrimination and retaliation claims under Title VII, the MFEPA and Section 1981 in this case. ECF Nos. 14 and 14-2. Specifically, the Plaintiff argues that her discrimination claims are viable under Title VII, the MFEPA and Section 1981, because: (1) the Title VII claims are timely filed; (2) her claims are not time-barred or unexhausted; (3) she has adequately alleged discrimination in the complaint; (4) she has exhausted her administrative remedies for the allegations regarding Mr. Pacha; and (5) she states a plausible claim for discrimination and hostile work environment. ECF No. 14-2 at 10-21. For similar reasons, the Plaintiff also argues that her retaliation claims are timely, exhausted and plausible under Title VII and the MFEPA, and that she engaged in protected activity and can show a plausible connection between this protected activity and the alleged retaliatory acts. *Id.* at 21-25. In addition, the Plaintiff argues that her hostile work environment/harassment claim under the MFEPA is plausible, because she has alleged facts in the complaint to show that GEICO engaged in severe or pervasive conduct, a nexus to a protected status and escalation, persistent trauma and a complaint pattern. *Id.* at 25-27. And so, the Plaintiff requests that the Court deny GEICO's motion to dismiss. ECF No. 14 at 3. In the alternative, the Plaintiff requests that the Court grant her leave to amend the complaint. ECF No. 14-2 at 27-28.

For the reasons that follow, a careful reading of the complaint shows that the Plaintiff has timely commenced this action under Title VII, but that some of the alleged adverse acts that the Plaintiff reliefs upon to support her Title VII, MFEPA and Section 1981 discrimination and retaliation claims are untimely. The complaint also makes clear that the Plaintiff has not administratively exhausted her discrimination and retaliation claims related to Mr. Pacha.

In addition, the factual allegations in the complaint make clear that the Plaintiff has not alleged plausible discrimination claims based upon GEICO's decision to recalibrate the company's performance rating system. The Plaintiff also fails to plausibly allege non-selection, disparate treatment and constructive discharge discrimination claims in the complaint. But the factual allegations in the complaint, taken as true, show that the Plaintiff alleges a plausible claim for harassment/hostile work environment. And so, the Court: (1) GRANTS-in-PART and DENIES-in-PART GEICO's motion to dismiss (ECF No. 12); (2) DISMISSES the following

allegations with respect to the Plaintiff's Title VII and MFEPA claims: (a) the January 2019 conduct by the Plaintiff's then-supervisor, Allen Trawick; (b) the March 5, 2019, cancellation of a team meeting with a separate meeting held without the Plaintiff and later informally taking the Plaintiff off of a project and reassigning the project, by Allen Trawick; (c) the Plaintiff's March 7, 2019, FMLA leave; (d) the May 20, 2019, closing of the Plaintiff's ethics complaint against Allen Trawick; (e) the 2019 initial denial of the Plaintiff from proceeding with a job application submitted via GEICO's internal job portal; and (f) the October 16, 2019, cut off of the Plaintiff's presentation; (3) DISMISSES the following allegations with respect to the Plaintiff's Section 1981 claims: (a) the January 2019 conduct by the Plaintiff's then-supervisor, Allen Trawick; (b) the March 5, 2019, cancellation of a team meeting with a separate meeting held without the Plaintiff and later informally taking the Plaintiff off of a project and reassigning the project by Allen Trawick; (c) the Plaintiff's March 7, 2019, FMLA leave; (d) the May 20, 2019, closing of the Plaintiff's ethics complaint against Allen Trawick; (e) the 2019 initial denial of the Plaintiff from proceeding with a job application submitted via GEICO's internal job portal; (f) the October 16, 2019, cut off of the Plaintiff's presentation; (g) the July 15, 2020, non-selection for the Supervisor – Leadership Training Development position; and (h) the August 2020, GEICO performance rating recalibration; (4) DISMISSES the Plaintiff's Title VII and MFEPA claims related to Benjamin Pacha in Counts I, III, IV and V of the complaint; (5) DISMISSES the Plaintiff's allegations regarding GEICO's performance rating recalibration in connection with her discrimination claims in Counts I, II and III of the complaint; (6) DISMISSES the Plaintiff's constructive discharge claim in Counts I, II and III of the complaint; and (7) DISMISSES the Plaintiff's retaliation claims in Counts IV and V of the complaint.

### A. The Plaintiff's Discrimination Claims Are Timely

As an initial matter, the Court is satisfied that the Plaintiff's Title VII and MFEPA claims are timely filed. It is well established that a Title VII plaintiff must bring a Title VII lawsuit within 90 days of receiving a right-to-sue letter. 42 U.S.C. § 2000e-5(f)(1); *see also Miles v. Dell, Inc.*, 429 F.3d 480, 491 (4th Cir. 2005); *Fisher v. Md. Dep't of Hous. & Cmty. Dev.*, 32 F. Supp. 2d 257, 264 (D. Md. 1998) ("[F]ailure to file suit within ninety days after receipt of a notice from the EEOC renders a plaintiff's action untimely."). "In the absence of evidence of the date of receipt, a right-to-sue letter is presumed to have been received by the plaintiff three days after it was issued and mailed, pursuant to Fed. R. Civ. P. 6(d)." *Weathersbee v. Balt. City Fire*

*Dep't*, 970 F. Supp. 2d 418, 426-27 (D. Md. 2013) (citing *Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 148 n.1 (1984) (applying presumption that notice is received three days after issuance, and citing former Fed. R. Civ. P. 6(e)).   In this case, it is undisputed that the EEOC issued a Notice of Right to Sue to the Plaintiff on September 5, 2024.  ECF No. 1-1 at 3.  Applying the presumption that the Plaintiff received this right-to-sue letter three days thereafter, on September 8, 2024, the Plaintiff must have commenced this employment discrimination action on or before December 8, 2024.  ECF No. 1.  Because she has done so, the Court declines to dismiss this matter as untimely.

**B.  Some Of The Plaintiff's Allegations Are Time-barred**

While the Plaintiff's Title VII and MFEPA claims are timely, the Court agrees with GEICO that some of the allege adverse acts that the Plaintiff relies upon to support her discrimination and retaliation claims are not timely.  Title VII also requires that an aggrieved party file a charge with the EEOC "within one hundred and eighty days after the alleged unlawful employment practice occurred."  42 U.S.C. § 2000e-5(e)(1); *Fort Bend County v. Davis*, 587 U.S. 541, 544-45 (2019).  "This period is extended to 300 days in a deferral state, one in which 'state law proscribes the alleged employment practice and the charge has initially been filed with a state deferral agency.'"  *Valderrama v. Honeywell Tech. Sols., Inc.*, 473 F. Supp. 2d 658, 662 n.4 (D. Md. 2007) (quoting *Williams v. Giant Food Inc.*, 370 F.3d 423, 428 (4th Cir. 2004)).  And so, if the Plaintiff failed "to file an administrative charge with the EEOC within one hundred eighty . . . days after an alleged discriminatory act occurs (or three hundred . . . days if the aggrieved person presented the claim to a state deferral agency), then the EEOC charge is not considered timely filed."  *Hentosh v. Old Dominion Univ.*, 767 F.3d 413, 417 (4th Cir. 2014) (citing 42 U.S.C. § 2000e-5(e)(1)).

In this case, it is undisputed that the Plaintiff dual-filed her charge of discrimination with the MCOHR and the EEOC on February 25, 2021.  ECF No.1 at ¶ 108; *see also* ECF No. 1-1 at 27-31.  Given this, the Plaintiff may only rely upon alleged adverse acts that occurred on or after May 1, 2020, to support her Title VII and MFEPA discrimination and retaliation claims in this case.

The Court reads the complaint to allege the following adverse acts related to the Plaintiff's discrimination and retaliation claims:

- **In January 2019**, the Plaintiff's then-supervisor, Mr. Trawick: (1) created his own work for a project assigned to the Plaintiff and did not use her submitted work and (2) consistently provided feedback and opportunities to his other direct employees, but withheld the same from the Plaintiff.   ECF No. 1 at ¶¶ 21-22.

- **On March 5, 2019**, Mr. Trawick cancelled a team meeting scheduled for March 5, 2019, and then held a separate meeting without the Plaintiff and later informally took the Plaintiff off of a project and reassigned the project only to the Plaintiff's Caucasian female counterpart.  *Id.* at ¶¶ 23-25.

- **On March 7, 2019**, the Plaintiff "went on a protected leave of absence under [the] Family and Medical Leave Act (FMLA) of 1993, to remove herself from the hostile work environment that she was experiencing from [Mr.] Trawick and other two coworkers at direction of Mr. Trawick"  *Id.* at ¶ 27.

- **On May 20, 2019**, GEICO closed the Plaintiff's ethics complaint against Mr. Trawick, and she continued to report to Mr. Trawick.  *Id.* at ¶¶ 34-36.

- **In 2019**, Mr. Trawick initially denied the Plaintiff from proceeding with a job application submitted *via* GEICO's internal job portal, while allowing her Hispanic female co-worker to proceed with an application for the same role without an initial rejection.  *Id.* at ¶¶ 41-44.

- **On October 16, 2019**, Mr. Trawick cut off the Plaintiff's presentation to a class of approximately 30 people, "attempted to intimidate [her] and undervalue what she was saying" in front of the class, and "attempted to remove [her] from presenting."  *Id.* at ¶¶ 46-48.

- **On July 15, 2020**, Mr. Cox informed the Plaintiff that she was not selected for this position of Supervisor – Leadership Training Development role in the GEICO Management Academy Department.  *Id.* at ¶¶ 72 and 75.

- **In August 2020**, GEICO conducted a company-wide performance rating recalibration.  *Id.* at ¶¶ 86-87.

- **On December 17, 2020**, the Plaintiff "learned the [lateral] permanent position offered to her previously by Mr. Cox was rescinded."  *Id.* at ¶ 91.

- **On January 6, 2021**, the Plaintiff was informed that her rotational position would end in February 2021, and that she would face a grade and salary demotion, or termination, unless she secured a permanent role within GEICO.  *Id.* at ¶ 98.

- **In 2021**, Benjamin Pacha, a Caucasian male, "was not only allowed to stay in a non-exempt status longer than [her], but was also given a job that was never available to [her] or posted on GEICO's job posting site."  *Id.* at ¶ 102.

- **On February 25, 2021**, the Plaintiff "was constructively discharged from GEICO, . . . due to imminent financial harm and not being provided the same treatment to be moved into a lateral permanent position." *Id.* at ¶ 104.

The Court agrees with GEICO that the alleged adverse employment actions that occurred before May 1, 2020, are time-barred for the purpose of the Plaintiff's Title VII and MFEPA claims. And so, the Court DISMISSES the following allegations with respect to the Plaintiff's Title VII and MFEPA claims: (1) the January 2019 conduct by the Plaintiff's then-supervisor, Mr. Trawick; (2) the March 5, 2019, cancellation of a team meeting with a separate meeting held without the Plaintiff and later informally taking the Plaintiff off of a project and reassigned the project, by Mr. Trawick; (3) the March 7, 2019, FMLA leave; (4) the May 20, 2019, closing of the Plaintiff's ethics complaint against Mr. Trawick; (5) the 2019 initial denial of the Plaintiff from proceeding with a job application submitted *via* GEICO's internal job portal; and (6) the October 16, 2019, cut off of the Plaintiff's presentation.

GEICO also persuasively argues that some of the Plaintiff's alleged adverse acts are time-barred under Section 1981's statute of limitations. Section 1981 claims are subject to a four-year statute of limitations. *See White v. BFI Waste Servs.*, LLC, 375 F.3d 288, 291-92 (4th Cir. 2004). Given this, the Plaintiff must bring her Section 1981 claims in this case within four years of the date on which the claims arose. *See id.* And so, the Plaintiff may only rely upon alleged adverse acts that occurred prior to December 6, 2020, to support her Section 1981 claims in this case.

As discussed above, the Plaintiff alleges many adverse acts that occurred before December 6, 2020, in the complaint. And so, the Court also DISMISSES the following allegations with respect to the Plaintiff's Section 1981 claims: (1) January 2019 conduct by the Plaintiff's then-supervisor, Mr. Trawick; (2) March 5, 2019, cancellation of a team meeting with a separate meeting held without the Plaintiff and later informally taking the Plaintiff off of a project and reassigning the project, by Mr. Trawick; (3) March 7, 2019, FMLA leave; (4) May 20, 2019, closing of the Plaintiff's ethics complaint against Mr. Trawick; (5) 2019 initial denial of the Plaintiff from proceeding with a job application submitted *via* GEICO's internal job portal; (6) October 16, 2019, cut off the Plaintiff's presentation; (7) July 15, 2020, non-selection for the Supervisor – Leadership Training Development position; and (8) August 2020, GEICO performance rating recalibration.

### C.  The Plaintiff Has Not Exhausted Her Claims Involving Mr. Pacha

GEICO also persuasively argues that the Plaintiff has failed to administratively exhaust her Title VII and MFEPA discrimination and retaliation claims related to the hiring and retention of Mr. Pacha in 2021.  It is well-established that the Court may not consider any matters that were not properly raised during the EEOC process, even when the Plaintiff has filed a timely claim with the EEOC.  *See, e.g.*, *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 963 (4th Cir. 1996) ("Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit."); *see also Mile*s, 429 F.3d at 491.  Given this, the Court must dismiss claims that were not raised in a charge of discrimination, or that are not reasonably related to the original complaint or developed by reasonable investigation of the original complaint.  *See Evans*, 80 F.3d at 963.  And so, to determine whether the Plaintiff has properly alleged her claims involving Mr. Pacha before the EEOC in a manner satisfying the exhaustion requirement, the Court looks only to the charge filed with that agency.  *Balas v. Huntington Ingalls Indus., Inc.*, 711 F.3d 401, 408 (4th Cir. 2013); *see also Evans*, 80 F.3d at 962-63 ("The allegations contained in the administrative charge of discrimination generally operate to limit the scope of any subsequent judicial complaint."); *Chacko v. Patuxent Inst.*, 429 F.3d 505, 506 (4th Cir. 2005) ("This charge frames the scope of future litigation.").

In this case, the complaint and the Plaintiff's charge of discrimination make clear that the Plaintiff did not raise her claims related to Mr. Pacha in the charge of discrimination.  In this regard, the Plaintiff alleges in her charge of discrimination that she was "subject to discrimination, retaliation and discriminat[ion] and retaliatory harassment on the basis of her sex [Female] and race [African American]" when:

> 1. During the period March 1, 2020[,] through August 1, 2020, Complainant was not selected for four separate positions she applied to by Cox.

> 2. During the period March 1, 2020[,] to the present, Cox failed to place Complainant into a non-rotational position.

> 3. During the period March 1, 2020[,] to the present Cox and Ahmed failed to give Complainant a lateral promotion and merit-based salary increase.

4. Cox and Ahmed inexplicably lowered the "Manager Observation" section of Complainant's quarterly rating, the only section where the rating is at the manager's discretion, for the last three quarters of 2020.

5. Cox told Complainant in December 2020 that because she could not be placed into a non-rotational position, she must accept a demotion, including a $20,000.00 salary decrease, or lose her job.

ECF No. 1-1 at 31.  But there is no mention in the charge of discrimination of Mr. Pacha, or of the events that the Plaintiff alleges in the complaint concerning Mr. Pacha's hiring and retention in 2021.  *See id.* at 26-31.

A careful review of the complaint also makes clear that the events related to Mr. Pacha occurred several months after the adverse acts alleged in the Plaintiff's charge of discrimination. Indeed, while the Plaintiff correctly observes that she raised concerns about being steered away from non-temporary assignments at GEICO, during the investigation of her charge of discrimination, these claims are neither in her charge of discrimination, nor directly related to Mr. Pacha's hiring and retention in 2021.  Given this, the Plaintiff has not administratively exhausted her claims related to Mr. Pacha.  And so, the Court DISMISSES the Plaintiff's Title VII and MFEPA claims related to Mr. Pacha in Counts I, III, IV and V of the complaint.

### D.  The Plaintiff's Claims Based On GEICO's Performance Rating Re-calibration Are Not Plausible

Turning to the merits of the Plaintiff's discrimination claims, the Court also agrees with GEICO that the Plaintiff's discrimination claims, based on the recalibration of the company's performance ratings, are not plausible.  To prevail on these claims, the Plaintiff must allege facts to show, among other things, an adverse employment action.  *See Felder v. MGM Nat'l Harbor, LLC*, No. 20-2373, 2022 WL 2871905, at *1 (4th Cir. July 21, 2022) (holding that the plaintiff must "plausibly allege that" the adverse employment action was taken "'because of' her race, color, or sex to withstand a motion to dismiss.").  "An adverse employment action is a discriminatory act that adversely affect[s] the terms, conditions, or benefits of the plaintiff's employment."  *Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 219 (4th Cir. 2007) (internal quotations and citations omitted).

In the complaint, the Plaintiff alleges that, in August 2020, she learned that GEICO was conducting a "company-wide performance calibration," that disproportionately impacted her and made her performance to "appear less satisfactory."  ECF No. 1 at ¶ 87.  While the Plaintiff

alleges that this performance rating recalibration was applied "unevenly, leading to discriminatory treatment," she alleges no facts to support this claim. *See id.* Nor does the Plaintiff allege facts to show how this new policy, which she acknowledges was company-wide and applied to all GEICO employees, was taken because of her race, color, or sex. *See id.*; *see also Felder*, 2022 WL 2871905, at *1. Given this, the factual allegations in the complaint regarding GEICO's performance rating recalibration are simply not sufficient enough to withstand a motion to dismiss. *See* Fed. R. Civ. P. 12(b)(6). And so, the Court also DISMISSES the Plaintiff's allegations regarding GEICO's performance rating recalibration in connection with her discrimination claims in Counts I, II and III of the complaint.

### E. The Plaintiff States A Non-selection Claim

GEICO's argument that the Plaintiff fails to state a non-selection claim is less convincing. To state a discrimination claim based upon non-selection, the Plaintiff must allege facts to show: (1) membership in a protected class; (2) she applied for a job which the employer was seeking applications; (3) she was qualified for the position; and (4) she was rejected from the position under circumstances giving rise to an inference of discrimination. *Brown v. McLean*, 159 F.3d 898, 902 (4th Cir. 1998). GEICO argues that the Court should dismiss the Plaintiff's non-selection claim, because the Plaintiff fails to allege facts to show that her supervisor in 2020, Mr. Cox, was motivated by race or gender bias when he selected a Caucasian female for the position of Supervisor – Leadership Training Development position instead of the Plaintiff. ECF No. 12-1 at 18-19. In this regard, GEICO argues that the Plaintiff fails to allege facts to create a reasonable inference that Mr. Cox was motivated by racial bias in connection with her non-selection, because she primarily relies upon the fact that: (1) the selected candidate was outside of her protected class; (2) the selected candidate and Mr. Cox are both Caucasian; and (3) she was better suited for the position. *See id.*

But a careful reading of the complaint shows that the Plaintiff alleges several facts that, taken as true, could support a reasonable inference that she was not selected for the Supervisor – Leadership Training Development due to her race. *See* ECF No. 1 at ¶¶ 7 and 76-79. And so, the Court declines to dismiss the Plaintiff's non-selection discrimination claims in Counts I, II and III of the complaint at the 12(b)(6) stage of this litigation.

F.  **The Plaintiff Fails To State Claims For**
    **Disparate Treatment And Constructive Discharge**

The Court is not satisfied, however, that the Plaintiff's disparate treatment claim is plausible.  To state a disparate treatment claim, the Plaintiff must allege facts to show: (1) membership in a protected class; (2) satisfactory work performance; (3) an adverse employment action; and (4) different treatment from similarly situated employees outside the protected class. *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010).  GEICO argues that the Plaintiff's disparate treatment claim regarding the filling of the Supervisor – Leadership Training Development position is not plausible, because, among other things, the Plaintiff fails to allege facts to show that she and the selected candidate, Alex Gillepsie, were similarly situated.  ECF No. 12-1 at 15.  While the Plaintiff does allege in the complaint that she was better suited than Ms. Gillepsie for the supervisory position, the complaint is devoid of factual allegations to show how the Plaintiff and Ms. Gillepsie were similarly situated.  See ECF No. 1 at ¶¶ 76-80 and 87-89.  And so, the Court must DISMISS the Plaintiff's disparate treatment claim related to the filling of the Supervisor – Leadership Training Development position in Counts I, II and III of the complaint.

 A careful reading of the complaint also makes clear that the Plaintiff's disparate treatment discrimination claim based upon Mr. Cox's alleged rescission of an offer of permanent employment with GEICO is not plausible.  The complaint makes clear that this claim is largely based on unexhausted allegations related to Mr. Pacha.  Notably, the Plaintiff relies upon factual allegations regarding the hiring and retention of Mr. Pacha in 2021 to show that she was treated disparately and discriminated against upon the basis of race and sex, when GEICO did not offer her permanent employment with the company.  ECF No. 1 at ¶¶ 102-103.  But the complaint lacks facts to show that the Plaintiff and Mr. Pracha were similarly situated to support this claim. *See id*.  And so, the Court also DISMISSES the Plaintiff's discrimination claim based upon Mr. Cox's alleged rescission of an offer of permanent employment with GEICO in Counts I, II and III of the complaint.

The complaint also makes clear that the Plaintiff's constructive discharge claim is not plausible.  To state a claim for constructive discharge, a plaintiff must allege facts to show that an "objective intolerability" in the workplace, meaning circumstances "so intolerable that a reasonable person would resign." *Doe v. Grmi, Inc*., No. 24-cv-1368, 2024 WL 3495779, at *2

(D. Md. July 22, 2024) (quoting *Chapman v. Oakland Living Ctr., Inc.*, 48 F.4th 222, 235 (4th Cir. 2022)).  This Court has held that "[i]ntolerability is assessed by the objective standard of whether a reasonable person in the employee's position would have felt compelled to resign." *Id.*  And so, difficult or unpleasant working conditions, without more, are not so intolerable as to compel a reasonable person to resign.  *See id.* (citing *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 212 (4th Cir. 2019)).

In the complaint, the Plaintiff alleges that she was constructively discharged by GEICO on February 25, 2021, when she did not secure a permanent position with the company.  ECF No. 1 at ¶ 104.  The Plaintiff also acknowledges in the complaint that she was informed on January 6, 2021, that she would face demotion or termination, if she did not secure permanent employment with GEICO, because her temporary position was scheduled to end in February 2021.  *Id.* at ¶ 98.

While the Court agrees with the Plaintiff that the complaint contains many factual allegations to show that she was discriminated and/or retaliated against upon the basis of race and/or sex during her tenure with GEICO, GEICO convincingly argues that these factual allegations are not sufficient to show that the Plaintiff was constructively discharged from the company.  Notably, the Plaintiff acknowledges receiving an offer from GEICO for a lower paying position with the company and that she opted to resign instead of accepting that position. *Id.* at ¶ 100 (alleging that GEICO informed her that she could remain with the company after her temporary rotational position ended, albeit, with a grade and "salary decrease of $19,536.54 to a new annual salary of $64,0463.46").  Given this, the factual allegations in the complaint do not show objective intolerability in the workplace, such that a reasonable person would resign.  *See Grmi, Inc.*, 2024 WL 3495779, at *2.  And so, the Court also DISMISSES the Plaintiff's constructive discharge claim in Counts I, II and III of the complaint.

### G.  The Plaintiff States A Plausible Harassment/Hostile Work Environment Claim

The Plaintiff's harassment/hostile work environment claim under the MFEPA is on much firmer footing.  To survive dismissal of her harassment/hostile work environment claim based on a protected characteristics, the Plaintiff "must offer facts that plausibly support inferences that 'she was subjected to (1) unwelcome conduct, (2) based on her race [or national origin] or sex, that was (3) severe or pervasive enough to make her work environment hostile or abusive and (4) imputable to [] her employer.'"  *Marie Laurent-Workman v. Wormuth*, (4th Cir. 2022) (quoting

*Bazemore v. Best Buy*, 957 F.3d 195, 200 (4th Cir. 2020) (internal citation omitted)).  And so, the Plaintiff must allege that her protected characteristic under Title VII was the "but for" cause of the alleged harassment.  *Id.*  In addition, under the continuing violation doctrine, the Plaintiff may recover for acts occurring even beyond the time-limitation period for a Title VII claim, so long as at least a portion of the hostile work environment occurred within the relevant limitations period."  *White v. BFI Waste Servs, LLC*, 375 F.3d 288, 292-93 (4th Cir. 2004) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122 (2002)); *see also Int'l Paper Co.*, 936 F.3d at 209 n.5 ("Unlike claims for disparate treatment and retaliation, the continuing violation doctrine applies to a hostile work environment claim.").

The Court is satisfied that the Plaintiff states a plausible harassment/hostile work environment claim under the MFEPA.  As discussed above, the complaint contains many factual allegations to show that the Plaintiff repeatedly experienced discrimination and/or retaliation during her employment with GEICO.  *See generally* ECF No. 1.  Because the Plaintiff may rely upon all the alleged adverse actions in the complaint to support her harassment/hostile work environment claim, under a continuing violation theory, the Court is satisfied that the complaint contains sufficient factual allegations that, taken as true, state a plausible claim for harassment/hostile work environment under Title VII and the MFEPA.

Notably, the Plaintiff alleges, among other things, that Mr. Trawick: (1) created his own work for a project assigned to the Plaintiff and did not use her submitted work; (2) consistently provided feedback and opportunities to his other direct employees, but withheld the same from the Plaintiff; (3) cancelled a team meeting scheduled for March 5, 2019, and then held a separate meeting without the Plaintiff; and (4) informally took the Plaintiff off of a project and reassigned the project only to the Plaintiff's Caucasian female counterpart.  ECF No. 1 at ¶¶ 21-25.  The Plaintiff also alleges that Mr. Trawick further engaged in adverse treatment of her when he initially denied her from proceeding with a job application submitted *via* GEICO's internal job portal while allowing her Hispanic female co-worker to proceed with an application for the same role without an initial rejection.  *Id.* at ¶ 41-44.  In addition, the Plaintiff alleges that, on October 16, 2019, Mr. Trawick cut her off during her presentation to a class of approximately 30 people, "attempted to intimidate her and undervalue what she was saying" in front of the class, and "attempted to remove her from presenting."  *Id.* at ¶¶ 46-48.  Lastly, the Plaintiff alleges that she required FMLA leave because of the alleged hostile work environment.  *Id.* at ¶ 27.

While GEICO argues that the complaint lacks facts to show that Mr. Trawick took any adverse actions against the Plaintiff based upon her race or gender, and that the Plaintiff alleges only ordinary workplace conflict in the complaint, the Court is satisfied that the factual allegations in the complaint, taken as true, are sufficient to support a plausible claim of harassment/hostile work environment. *See* ECF No. 1 at ¶¶ 7, 19-25; 27-29; 32-36; 39-43; 46-48; 59; 61; 72; 78-79; 89; 91 and 100.  And so, the Court declines to dismiss the Plaintiff's harassment/hostile work environment claim under Title VII and MFEPA. *See* Md. Code Ann., State Gov't § 20-601(h)(1)-(3) (prohibiting discrimination "based on race, color, religion, ancestry or national origin, sex, age, marital status, sexual orientation, gender identity, disability, or military status," when "based on the totality of the circumstances, the conduct unreasonably creates a working environment that a reasonable person would perceive to be abusive or hostile").

### H.  The Plaintiff Fails To State Plausible Retaliation Claims

As a final matter, the Court agrees with GEICO that the Plaintiff's retaliation claims are not plausible, because the complaint lacks facts to show that the Plaintiff engaged in a protected activity prior to the alleged retaliation.  To state a retaliation claim under Title VII, the Plaintiff must allege facts to show that: (1) she engaged in protected activity; (2) the employer took adverse action against her; and (3) a causal relationship existed between the protected activity and the adverse employment action. *Foster v. Univ. of Md.-Eastern Shore*, 787 F.3d 243, 250 (4th Cir. 2015).  The Court agrees with GEICO that the Plaintiff has not identified a protected activity to support her retaliation claims.  ECF No. 12-1 at 24-26.

In the complaint, the Plaintiff alleges the following protected activities: (1) the March 14, 2019, ethics complaint against Mr. Trawick; (2) the April 2, 2019, filing of follow-up record asking about the status of her pending ethics complaint; (3) the April 10, 2019, filing of another record in her ethics complaint about a strenuous work call with Mr. Trawick; (4) the October 2019 meeting and phone calls with human resources regarding Mr. Trawick; (5) the July 21, 2020, email to human resources regarding the selection for the Supervisor – Leadership Training Development position; and (6) her February 25, 2021, charge of discrimination.  ECF No. 1 at ¶¶ 28, 30, 33, 50-53, 82 and 104.  But, with the exception of the filing of the Plaintiff's charge of discrimination, the complaint makes clear that none of these alleged protected activities involve claims that the Plaintiff was discriminated and/or retaliated against due to her race or gender.

Notably, the complaint shows that the Plaintiff's 2019 ethics complaint, and related follow-up with human resources, involved claims that Mr. Trawick engaged in unprofessional conduct toward her and other GEICO employees who are not members of the Plaintiff's protected classes. *Id.* at ¶¶ 28, 30 and 33-38.  There are also no facts in the complaint to show that the Plaintiff raised discrimination claims in her July 21, 2020, email to human resources. *See id.* at ¶¶ 82-83.

Given this, the complaint lacks facts to show that the Plaintiff engaged in a protected activity prior to the filing of her charge of discrimination.  And so, the Court DISMISSES the Plaintiff's retaliation claims in Counts IV and V of the complaint.[8]

## V.     CONCLUSION

For the foregoing reasons, the Court:

(1) **GRANTS-in-PART and DENIES-in-PART** GEICO's motion to dismiss (ECF No. 12);

(2) **DISMISSES** the following allegations with respect to the Plaintiff's Title VII and MFEPA claims: (a) the January 2019 conduct by the Plaintiff's then-supervisor, Allen Trawick; (b) the March 5, 2019, cancellation of a team meeting with a separate meeting held without the Plaintiff and later informally taking the Plaintiff off of a project and reassigning the project, by Allen Trawick; (c) the Plaintiff's March 7, 2019, FMLA leave; (d) the May 20, 2019, closing of the Plaintiff's ethics complaint against Allen Trawick; (e) the 2019 initial denial of the Plaintiff from proceeding with a job application submitted *via* GEICO's internal job portal; and (f) the October 16, 2019, cut off of the Plaintiff's presentation;

(3) **DISMISSES** the following allegations with respect to the Plaintiff's Section 1981 claims: (a) the January 2019 conduct by the Plaintiff's then-supervisor, Allen Trawick; (b) the March 5, 2019, cancellation of a team meeting with a separate meeting held without the Plaintiff and later informally taking the Plaintiff off of a project and reassigning the project by Allen Trawick; (c) the Plaintiff's March 7, 2019, FMLA leave; (d) the May 20, 2019, closing of the Plaintiff's ethics complaint against Allen Trawick; (e) the 2019 initial denial of the Plaintiff from

---

[8] The Plaintiff requests the opportunity to amend the complaint to cure any deficiencies in that pleading. ECF No 14-1 at 27-28.  But she does not explain how the proposed amendments to the complaint would cure these deficiencies. *See id.*  And so, amendment of the complaint would be futile. *See* Fed. R. Civ. P. 15.

proceeding with a job application submitted *via* GEICO's internal job portal; (f) the October 16, 2019, cut off of the Plaintiff's presentation; (g) the July 15, 2020, non-selection for the Supervisor – Leadership Training Development position; and (h) the August 2020, GEICO performance rating recalibration;

(4) **DISMISSES** the Plaintiff's Title VII and MFEPA claims related to Benjamin Pacha in Counts I, III, IV and V of the complaint;

(5) **DISMISSES** the Plaintiff's allegations regarding GEICO's performance rating recalibration in connection with her discrimination claims in Counts I, II and III of the complaint;

(6) **DISMISSES** the Plaintiff's constructive discharge claim in Counts I, II and III of the complaint; and

(7) **DISMISSES** the Plaintiff's retaliation claims in Counts IV and V of the complaint.

A separate Order shall issue.

**IT IS SO ORDERED.**

s/ Lydia Kay Griggsby
LYDIA KAY GRIGGSBY
United States District Judge